CLARENCE TEMPLE *v.* STATE.

[62 South. 429.]

1. CRIMINAL LAW.  *Opinion of witness.  Course of bullet.  New trial. Impeachment of verdict.*

Where on a murder trial, the relative position of the accused and the deceased at the time of the killing, is a material inquiry, it was reversible error to allow a witness for the state who had examined the room in which the homicide occurred and found bullet marks on the wall, to testify that in his opinion the party firing the shots must have been located at a certain place in the room.

2. CRIMINAL LAW.  *Impeachment of verdict.*

It is not competent for jurors to impeach their verdict of guilty by testimony on a motion for a new trial that at the time they rendered the verdict they did not believe the defendant guilty.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Clarence Temple was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*L. A. Whittington* and *J. A. Naul,* for appellant.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

Argued orally by *J. A. Naul* and *E. O. Whittington,* for appellant and *Geo. H. Ethridge,* assistant attorney-general, for the state.

COOK, J., delivered the opinion of the court.

Appellant was convicted in the circuit court of Lincoln county of the crime of manslaughter and sentenced to ten years' confinement in the state penitentiary. Deceased was a son of a man of great prominence and wide

acquaintance throughout the county, and the father was also an officer of the court trying appellant, and had been such for a number of years.

The homicide resulted from the jealousy of the deceased about the relations of a woman of the underworld, his mistress, with appellant. By the testimony of this woman the state's case was proven; in fact, if her testimony is to believed, the defendant was guilty of the crime of murder. After the organization of the jury the court put them in charge of two bailiffs, specially sworn, and instructed them to keep the jury together and not allow them to separate, and also to prevent any possibility of the jury coming in contact with outside influences. After the organization of the jury the record discloses a mélange of irregularity and errors.

First. The father of the deceased, and a witness for the state, over the protest of defendant, was permitted to testify that he had examined the room, the scene of the homicide, and found certain bullet marks in the walls thereof, and that in his opinion the party firing the shots must have been located at a certain place in the room. This opinion of the witness, if believed by the jury, was contradictory of the defendant's evidence, and therefore it must have been prejudicial to his case before the jury. There is no pretense that the witness was an expert in the range of bullets, and in *Foster* v. *State,* 70 Miss. 755, 12 So. 822, the testimony of this witness with reference to the range of the bullet and the probable location of the person firing the pistol was held to be error. Speaking of this class of testimony, the court said: "Where, on a murder trial, the relative position of the accused and the deceased, at the time of the killing, is a material inquiry, a medical expert who had made a post mortem examination may testify as to the point of entrance and exit, and the course and range of the ball through the body; but it is error to permit him to state his opinion that a hole in an adjacent wall was within the range, or

to state his opinion as to the position of the arm or hand of the deceased when shot, these being conclusions resting in common knowledge and not upon scientific learning."

In total disregard of the instructions of the court, the sheriff, on the first night the jury was out, substituted another man for one of the sworn bailiffs; on the second night both of the sworn bailiffs were temporarily excused by the sheriff, and two other men substituted in their places. This substitution was without the knowledge of the trial court, and was not learned by the judge until after the verdict of the jury was rendered.

While the jury was considering the case, it appears from the testimony of one witness that some person had communication with the jury. This witness testified that he saw a man standing on the ground immediately under the window of the room in which the jury was confined, and he knew that he was in conversation with members of the jury, but was unable to tell what was said in this conversation. In explaining these circumstances, upon the motion for a new trial, the state introduced a witness who testified that while the jury was in the room he went about twenty feet from the window in question, and near the courtyard fence, and from there had spoken to a member of the jury, but had no conversation with him about the case, or about anything else. It is not conclusive that this witness was the party referred to by the witness for the defendant, as, according to the testimony of defendant's witness, the party referred to by him was not at the place where the state's witness says he was when he spoke to a member of the jury.

After the jury had been considering the case for two days, the trial judge, in pursuit of private business, left the courthouse and the county of Lincoln and went into an adjoining county, the county of Copiah, and remained absent from the jurisdiction of the court for seven or eight hours. Speaking of a case exactly like this, the

Court of Appeals of Georgia, in *Martin* v. *State,* 10 Ga. App. 455, 73 S. E. 686, had this to say: "Where the judge is within call of the jury and physically absent, but at a place so near by that he can easily return, if needed, he may be presumed to be constructively present at the courthouse; but this presumption cannot be indulged when the judge goes to a place beyond the jurisdiction of the court in which the trial is being had. Where the judge is not only physically out of the presence of the jury, but also absent in a legal sense, and at such a point as to be beyond the reach of the other essential component, but subordinate, parts of the court, which should be subjected to his supervision, the court is necessarily dissolved *pro tempore,* at least so far as the trial first pending is concerned."

While the judge was absent, it appears that the bailiffs in charge of the jury took the jury out in the city of Brookhaven and allowed them to separate; three of the jurors going into a barber shop and the balance of the jurors going across the street, 60 or 80 feet away, and out of view of their fellow jurors. One of the bailiffs remained with the three jurors in the barber shop. It is shown that one of the barbers, while shaving one of the jurors, asked the juror about the case on trial, and secured from him the information that the jury then stood ten for conviction and two for acquittal. This occurred a short while before the return of the verdict of the jury. It is shown, also, that no one in the barber shop was advised that the three jurors being shaved were members of the jury trying a man for a capital offense, and that while the jurors were in the barber shop a discussion went on between the by standers about this case, though it is not shown that anything said tended to prejudice the defendant.

During the absence of the judge of the court, by agreement of counsel, and at the request of the attorneys interested in the case, a member of the bar presided as

judge in the trial of a civil case; the jury in this case being confined in a room adjoining the courtroom in which the trial of this civil case was proceeding. At this time, the jury, having been unable to agree upon a verdict, asked the bailiff to so announce to the court, and to request that they be permitted to make a report to the court and be discharged. The special judge merely told the bailiff that he could not receive a report from the jury, and that the judge of the court was absent and in Copiah county. The bailiff, however, supplemented what the special judge said, and reported to the jury that the special judge had said that he could not discharge them until they had reached a verdict. Then it was that the jury immediately got down to business and agreed upon the verdict rendered in this case.

The trial judge, in overruling the motion for a new trial, said that the record of the trial was as clean as a hound's tooth, meaning thereby that there was no error in the record. We regret that we find ourselves unable to agree with the trial judge. We do not wish to be understood as approving the decision of the Court of Appeals of Georgia; yet we must say that it is difficult to discover any fault in the reasoning of the court.

It is probable that the error in permitting the state's witness to give his opinion of the position of the accused when he fired the shot found in the wall of the room would not suffice to reverse this case. Taking the entire record, however, it is evident to this court that the trial of this defendant did not proceed upon the safe line necessary to the preservation of the rights of the defendant, and it cannot be said, with any degree of confidence, that the many irregularities and errors did not contribute to the result reached by the jury; on the contrary, it seems to us, in the nature of things, they must have exercised a potent influence.

Two of the jurors, without objection from the state, were permitted to testify that they did not believe at the

time they rendered their verdict that the defendant was guilty, nor did they believe he was guilty at the time they were testifying. It was also shown, without objection, that after the jury had received from the bailiffs the information that they could not be discharged until they had rendered a verdict the two jurors in question, after summing up the cost to the county of a new trial of the case, decided to come over to their fellows and render a verdict of guilty of manslaughter. This character of testimony, of course, was incompetent; but it serves to illustrate the danger which might have resulted to a person upon trial for his life on account of the lax method adopted by the bailiffs in charge of the jury.

This court is loath to disturb the verdicts of juries, unless it appears that some error has been committed which must have prejudiced the accused; but in this case it is impossible to say that the errors did not prejudice the accused and the case is therefore reversed and remanded.

*Reversed and remanded.*