BYRD v. STATE.

(Division B. March 15, 1937.)

[173 So. 282. No. 32520.]

Fred S. Toombs, of Memphis, Tenn., for appellant.

**Webb M. Mize,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, William Byrd, was indicted, tried, and convicted in the circuit court of Lafayette county on a charge of grand larceny of two cows belonging to one John N. Cook, and sentenced to serve five years in the State Penitentiary, from which this appeal is prosecuted. The said John N. Cook lived in Lafayette county on a farm bordering on Marshall county, the fence being on the north side along the county line. On June 5, 1936,

he was the owner of certain milk cows and found that the fence along the county line had been thrown down by the pulling of the posts to which the wire was attached, and that there were certain cattle and human tracks at that point, the human tracks having a certain mark indicating a hole in the sole of the shoe. Just outside were the tracks of a truck which had a rear wheel with a certain tread distinctly visible, and this truck was traced from a point adjacent to where the fence was down into the highway leading into Memphis. Cook asked the sheriff of Lafayette county and another party to accompany him, and they proceeded until they passed the Tennessee line.

In the search for the cattle, Cook and others went to the home of William Byrd to ascertain of some one thought to be there as to cattle dealers in and around Memphis, and there saw a truck having on its rear wheel a tire with the same kind of tread seen at the place where the cattle were taken. They asked Byrd if he had any milk cattle, and he replied that he had only two which he had raised. On being asked if they might see them, Byrd said he would be glad to go with them and show them the cattle. He started toward his barn from which the cattle were turned into the pasture, then went into his house, and a little later returned to the barn. In the meantime he had a conversation with a boy, and the parties searching for the cattle then went down the trail leading to the public road, and noticed this boy going down this road in a run. Later this boy had the cows. Byrd had told these persons that the cows were in an opposite direction and started in that direction ostensibly for the purpose of locating the cows. These persons identified one cow the boy was driving as the property of Cook, and as they approached the boy, he ran. The appellant stated that if it was the property of Cook, he (appellant) had bought the cows from a party on highway 51; that he was looking for hogs, and

came to where a party with a truck containing cattle was changing a tire, and suggested that he let appellant haul his cattle in, but this offer was declined, the party stating that it was only a puncture. Appellant stated that he offered to buy the cattle and had some conversation as to value; that he offered $20 for one cow, and the party stated that he would only take $30, and appellant then asked if he would take $22.50, which the party refused, but later accepted, and appellant stated that he took the one cow to his place, and that this cow had a ruptured udder and was unfit for a milk cow, but this was denied by Cook.

After this cow was identified, a deputy sheriff of Shelby county, Tenn., was sent for, and appellant stated that he had a "hot cow." He was asked if he would return to Mississippi without extradition and stated he would, and appellant was taken to Oxford, Miss., there placed in jail, and subsequently tried and convicted.

The appellant stated, when the above discussion took place, that the truck from which the cow was purchased had a Mississippi license on it, but he did not take or remember the number, and did not inquire as to the rightful owner of the cow, or where the party lived or his name.

It also appeared in the evidence that when the appellant was about 11 or 12 years old he lived, as a tenant, on the place of J. N. Cook, and had been in that community some months before, and knew all the parties in the crowd except the sheriff of Lafayette county, but that he was introduced to and knew he was the sheriff of that county.

It is assigned as error that the above evidence as to the finding of the cow constituted unlawful search and seizure, and that evidence so obtained was unlawfully admitted. It is also assigned as error that the proof of guilt is insufficient to sustain a conviction.

There is no citation of any decision or the Constitution of Tennessee to show that the facts stated constitute unlawful search and seizure under the laws of that State, but it is unnecessary to pass upon the laws of Tennessee bearing thereupon, because, under the proof, it is clear and undisputed that the appellant consented to the search, and, consequently, he cannot complain thereof.

We think the evidence is sufficient to sustain the conviction. The appellant's truck had tires with the same tread or mark as those found at the place where the cattle were taken. The appellant, on his return to the house, sent the boy to get the cows manifestly for the purpose of concealment or removal from the premises, when he attempted to lead the parties in an opposite direction.

The appellant attempted to prove an alibi by another person and wife, and by his own wife, showing that on June 5, 1936, appellant was at his home, and other parties were there as guests, at an ice cream supper, but on an examination of this testimony, there is found to be considerable conflict, from which the jury was warranted in its decision.

We find no reversible error, and the judgment of the court below will, therefore, be affirmed.

Affirmed.