223 So.2d 524 (1969)
Travis BUCKLEY
v.
STATE of Mississippi.
No. 45219.
Supreme Court of Mississippi.
June 2, 1969.
*525 L. Percy Quinn, A.S. Scott, Jr., Laurel, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant Travis Buckley, an attorney, was indicted, tried and convicted of the crime of kidnapping in the Circuit Court of Jackson County. He was sentenced to serve a term of ten years in the state penitentiary and was disbarred from the practice of law in conformance with Section 8667, Mississippi Code 1942 Annotated (1956). From this sentence he appeals. We reverse and remand.
Appellant and one Billy Roy Pitts were jointly indicted at the April 1967 term of the court. The indictment, omitting the formal parts, is in the following language:
That Travis Buckley and Billy Roy Pitts late of the County aforesaid, on the 4th day of March in the year of our Lord 1967, in the County aforesaid, did unlawfully, wilfully, feloniously and forcibly, and without authority of law, inveigle and kidnap one Jack Watkins, a human being, against his will, with the unlawful and felonious intent to cause the said Jack Watkins to be deprived of his liberty against the peace and dignity of the State of Mississippi.
Appellant was granted a severance and was tried at the April 1967 term of the Court. This trial resulted in a mistrial because the jury failed to agree. Pitts, the co-indictee, testified at this first trial on behalf of appellant. Prior to the January 1968 term of the court, Pitts plead guilty to the indictment and was sentenced to serve a term of five years in the state penitentiary. In the trial of this case he changed his testimony and testified on behalf of the state.
The principal witnesses for the state were Jack Watkins and Billy Roy Pitts. The substance of their testimony was that at about 9 P.M. on March 4, 1967, appellant and Pitts drove in Buckley's car to the home of Watkins in Pascagoula, where Buckley introduced himself as county prosecuting attorney of Jasper County. After introducing Pitts, Buckley told Watkins that he wanted him to do a job for him. Watkins went with him and they got into the car with Buckley and Pitts sitting on the front seat and Watkins on the back seat. After a short conversation, the subject of whisky was brought up and Watkins said he would like to have a drink. Buckley drove west on Highway 90 to Biloxi and *526 stopped at the first package store. He got out and went into the store and came back with a fifth of "Wild Turkey" and a fifth of "Southern Comfort." They then drove on to a filling station where they purchased gasoline and chasers. Buckley then made a left turn, drove across the median strip, and turned east on Highway 90 and drove back toward Pascagoula. He drove off the highway and parked in a beach parking area. At this time a Ford Falcon with three men in it parked behind them. Buckley got out of the car and went back and talked with these men. Pitts and Watkins began drinking; Watkins was drinking the "Southern Comfort" and Pitts the "Wild Turkey." Apparently, Buckley did not do any drinking on this occasion. When Buckley came back, he told Watkins that he had information that Watkins and another person had kidnapped Lawrence Byrd and forced him to give a statement which was being used as a basis for the prosecution of some men that Buckley was defending. Watkins denied knowing anything about such an incident and asked Buckley to take him home. Instead of taking Watkins home, Buckley drove east on the highway and then turned north off the highway onto a remote dead-end road where he stopped. After he stopped the Ford Falcon pulled in behind his car and stopped. Buckley pointed a hunting knife at Watkins and told him if he did not give him the statement that he wanted he would turn him over to the three men in the car behind them. Watkins again refused to give the statement and two of the men, wearing hoods, got out of the Ford and came alongside Buckley's car. Pitts identified these men as Deavours Nix and Cecil Sessums. He identified the third man, who remained in the car, as Sam Bowers. Pitts said that they had all gotten together in Laurel and he told him that they were coming to Pascagoula to see a man. One of the hooded men jerked Watkins out of the car and threw him on the ground, pulled one of his arms behind his back, and the other man took a pistol, which they told Watkins had been unloaded except for one bullet in the cylinder, put it to Watkins' head, and told Watkins to give Buckley the statement that he wanted. Watkins refused and the man snapped the pistol several times. After other threats and Watkins' refusal to talk, the two men went into the woods, telling Watkins that they were going to dig his grave. Pitts then took Watkins off some distance and beat him. After a lapse of time, Buckley got the men to release Watkins, and they got back into the car and Buckley drove to Watkins' home. It was then about 2 A.M. Watkins did not tell anyone about the incident until several hours later. He first called Speed Henderson, one of the men that Buckley told Watkins had given him the information relative to the statement of Byrd. He then called Mr. Fagerty, a lawyer and a friend, for advice as to what to do. Later that day, an agent of the FBI came to Watkins' home and took his statement about the incident of the night before and this prosecution resulted.
Buckley testified in his own behalf and stated that he had information he considered reliable that Watkins and another person had kidnapped Lawrence Byrd and forced him to give a false statement which was being used to prosecute some men he was defending. He said that he got Pitts to go to Pascagoula with him to talk to Watkins, and all he wanted Watkins to do was tell the truth so he could properly defend his clients. He said that he and Pitts went to the home of Watkins and there told Watkins that he had a job he wanted him to do; that they all got in his car, and after a short conversation, Watkins asked if he had a drink, and he told him he did not but he would get him one; that they then drove to Biloxi where he purchased the two fifths of liquor, and after purchasing gasoline and chasers, drove back to Pascagoula to the beach parking area. He denied that any other car followed them or that he got one of the car. He said he then told Watkins that he knew a man that had broken into a store in Stringer, and he wanted Watkins to get a confession out of him like he had gotten one from Byrd. Watkins told *527 him that he had the law on his side when he did that, and they had something to offer by not prosecuting him for a burglary. Watkins told Buckley that he would do anything that he wanted him to do except to testify about Byrd, because if he did they would send him back to the penitentiary. Buckley said during this time, Watkins was drinking heavily and that they left the parking area, and after driving some distance, he drove off the highway so Watkins could take another drink. They parked on a road, and after some further conversation, Pitts and Watkins got out of the car. They got into an argument and Watkins swung at Pitts with a small knife. Pitts avoided the knife and hit Watkins several times, blooding his nose. Buckley stopped Pitts from hitting Watkins, and after Watkins had stumbled and fell over a wire, he got them back into the car. He then drove Watkins home and let him out of the car. Watkins was drunk, having consumed almost all of the "Southern Comfort."
Buckley denied that the Ford Falcon followed them, or that any other persons were present at any time during the night. He said that Watkins went with them willingly and never at any time asked to be taken home, nor was he in any way restrained.
Appellant assigns as error several grounds for reversal of this case, but we will only discuss those we deem necessary for the disposition of this appeal. It is urged that the indictment on which appellant was tried was void and that the evidence on behalf of the state was not sufficient to constitute the crime of kidnapping. It is contended that the indictment is fatally defective because it fails to state that Watkins was forceably seized and confined, or that he was secretly confined or imprisoned in the state. The indictment is based upon Section 2237, Mississippi Code 1942 Annotated (1956) and reads as follows:
Every person who shall, without lawful authority, forcibly seize and confine any other, or shall inveigle or kidnap any other with intent to cause such person to be secretly confined or imprisoned in the state against his will, or to cause such other person to be sent out of this state against his will, or to cause such other person to be deprived of his liberty, or in any way held to service against his will, shall upon conviction, be punished by imprisonment in the penitentiary not exceeding ten years; and upon the trial of any such offense the consent of the person so kidnapped or confined shall not be a defense, unless it appear that such consent was not extorted by threats or duress.
As we construe the statute, the indictment in this case comes within its terms. The statute not only makes it a crime to forceably seize and confine another, but it also makes it a crime to inveigle another and then kidnap such other person with the intent to cause such other person to be deprived of his liberty. This is what the indictment in this case charges. It was also argued orally that the indictment is void because it charges that the appellant forcefully inveigled and that it is not possible to inveigle someone by force. It is apparent from the face of the indictment that what is intended to be charged is that the appellant inveigled Watkins and then forcefully kidnapped him. Appellant did not demur to the indictment, and this defect, if it is a defect, appears on the face of the indictment and the proper way to raise such defect is by demurrer. If a demurrer had been imposed, the state could have obtained leave to amend the indictment to eliminate this objection.
Appellant also urges that the trial court was in error in refusing to grant this motion for a directed verdict. We have carefully considered this argument in this regard and find no merit therein.
Appellant assigns as error the action of the trial court in overruling his objection to that part of the testimony of Pitts wherein he testified that he had been jointly indicted *528 with Buckley on the charge of Kidnapping Jack Watkins and that he had plead guilty to that charge, and as a result of his plea of guilty, had been sentenced to serve a term of five years in the state penitentiary. The overruling of this objection and admission of this testimony was reversible error. The law is well settled in this state that where two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried. State v. Thornhill, 251 Miss. 718, 171 So.2d 308 (1965); Pieper v. State, 242 Miss. 49, 134 So.2d 157 (1961); Pickens v. State, 129 Miss. 191, 91 So. 906 (1922). Not only was this testimony designed to lead the jury to believe that since Pitts had plead guilty to the charge, that his co-indictee, Buckley, was also guilty, but it was also designed to bolster the testimony of Pitts. On the first trial of this case Pitts testified and his testimony in that trial corroborated Buckley's version of what happened. On this trial he testified directly contrary on the crucial issues. The state was aware that the evidence that Pitts had plead guilty to the same charge since the former trial would add weight to his testimony. It had the effect of bolstering the testimony of an admitted perjurer.
Appellant contends that it was error for the trial court to overrule his objections to the leading questions asked by the district attorney to Watkins relative to the details of Watkins' criminal records. Apparently it was the trial strategy of the district attorney to bring out the criminal record of Watkins on direct examination, rather than have the defendant bring it out on cross examination. Watkins testified that he had been convicted of armed robbery, burglary, and car theft. There was nothing improper about the district attorney bringing this out on direct examination, but it was not proper for him to bolster Watkins' testimony by leading questions, an example of which is as follows: "Q. And, so, in other words, you have paid your penalty, is that right?" When this was objected to the court stated, "He served his sentence, he served his time as required by law." Of course, the question as asked was objectionable and the objection should have been sustained. Furthermore, the comment of the court could be misinterpreted by the jury. We would not point this out if it were the only incident of this nature in the record, but there are other incidents in the record of a similar nature. They should not reoccur on another trial.
It is also urged that the trial court restricted appellant in his cross examination of Watkins and Pitts. Appellant does not set out in his brief the specific instances where he contends he was restricted except referring to many pages in the record. We have reviewed these and while there are a few instances where the court did unduly restrict the cross examination, we will not attempt to set them out herein. All that is needed to be said on this subject is that wide latitude should be allowed in cross examination of witnesses in criminal cases. Prewitt v. State, 156 Miss. 731, 126 So. 824 (1930).
Since we have determined that this case must be reversed for a new trial we need not discuss the assignment of error relative to refusal of the trial court to grant a continuance because of an incident that occurred in the courtroom on the day this case was set for trial. However, we did consider the facts developed on the motions in determining whether the error heretofore set out was reversible error.
There are other errors assigned but they are either without merit or unlikely to recur on another trial.
For the reasons heretofore stated, this case is reversed and remanded.
Reversed and remanded.
*529 All Justices concur, except ETHRIDGE, C.J., GILLESPIE, P.J., and ROBERTSON, J., who dissent.
RODGERS, Justice (specially concurring):
I specially concur with the majority opinion in this case. I am convinced that the appellant did not get a fair trial. This case starts out under a cloud. The defendant was arrested and put in jail for contempt of court without an opportunity to interrogate his accusers. A new jury was summoned by the Court and the literate citizens of the county were notified in the local paper that the defendant had attempted to tamper with the first jury, and that he was the lawyer who represented the Ku Klux Klan. It was therefore highly probable that a preconceived judgment of guilt permeated the trial.
The defendant was not charged with being a member of the Ku Klux Klan, nor with whitecapping. He was charged with kidnapping, in that he "inveigled another and caused such person to be deprived of his liberty." Assuming all the evidence the government presented as true, there is very little evidence to show that the defendant deprived the prosecuting witness of his liberty. Again, assuming the testimony of a perjurer and a convict is sufficient to establish a tenuous case, nevertheless, the defendant was entitled to due process in a state court which was not obviously saturated with federal marshals. He is entitled to a constitutional hearing on the charge for which he was indicted. He is not required to answer a national political vendetta, nor should he be upbraided before the jury.
The defendant is not only entitled to a ney trial; he is entitled to a fair trial, in a court not highly charged with emotion.
ETHRIDGE, Chief Justice (dissenting):
The Constitution guarantees to an accused a fair tiral, not a perfect trial. This was a lengthy and hard tried case. The controlling opinion correctly concludes that Buckley's guilt was a question for the jury, but orders a new trial because of the erroneous admission of certain cumulative testimony. In my opinion, this was harmless error. Buckley received a fair trial, and there are no reversible errors.
The fact of a plea of guilty by a co-indictee is not generally admissible in evidence against another co-indictee. But the real question here is whether, considering the entire record, its admission was harmful to defendant and warrants a reversal. Reversible error might well exist where an absent co-indictee's previous conviction or guilty plea is introduced in evidence through court records. Pickens v. State, 129 Miss. 191, 91 So. 906 (1922). Prejudicial error might also exist where a co-indictee takes the stand and testifies to a previous conviction or guilty plea without making an in-court confession. However, in the instant case these prejudicial factors do not exist. Pitts testified in great detail about his and Buckley's kidnapping and beating of the state's witness, Watkins. Without his testimony about any previous guilty plea, Pitts made a detailed, in-court confession of his guilt. He clearly established the fact that he was guilty of the crime of kidnapping. Moreover, he was subjected to a searching cross-examination by the defendant himself.
When Pitts went one step further on direct examination and testified that he had previously pleaded guilty to the same crime, he added nothing to his otherwise competent testimony. That evidence was mere surplusage, and although incompetent, was not, in my judgment, sufficient to establish an error justifying reversal of the conviction.
Since 1912 this Court has had Rule 11, which states that no judgment shall be reversed due to the improper admission of evidence "unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." 103 Miss. 903, 906 (1912). In a multitude of criminal cases, this Court over the years has applied this harmless error *530 rule. See, for example, Collins v. State, 202 So.2d 644 (Miss. 1967); Traxler v. State, 244 Miss. 403, 142 So.2d 14 (1962); Hatcher v. State, 230 Miss. 257, 92 So.2d 552 (1957); Cobb v. State, 226 Miss. 181, 83 So.2d 833 (1955); Smyley v. State, 224 Miss. 118, 79 So.2d 539 (1955); Grace v. State, 212 Miss. 784, 55 So.2d 495 (1951); Comings v. State, 163 Miss. 442, 142 So. 19 (1932).
The law of evidence is a mere means to an end, the just decision and settlement of particular controversies. It is not an end in itself. It is not an end so independent of practical reason that it must be attained by rigid adherence to the rules of evidence. The orthodox English rule was that an erroneous admission of evidence was not a sufficient ground for setting aside a verdict and ordering a new trial, "unless upon all the evidence it appeared to the judges that the truth had thereby not been reached." The Exchequer rule, used in England for about a generation from 1830, signified that an error in a ruling on evidence created per se for the objecting and defeated party a right to a new trial. 1 Wigmore on Evidence § 21 (3d ed. 1940). The Exchequer rule was carried over into some courts in this country, but this jurisdiction has long since rejected it in favor of the harmless error doctrine stated in our Rule 11.
In short, rules of evidence are not arbitrary, but are merely instruments for the fact-finding process, based on rational purposes and practical experience. Accordingly, violation of a rule of evidence should not result in the costly and time-consuming penalty of a new trial, unless it affirmatively appears from the whole record that a miscarriage of justice has resulted.
There was ample evidence to support the jury's conclusion that Buckley was guilty of the offense charged. In fact, up to a certain point Buckley's own testimony corroborated that of Pitts and Watkins, the state's witnesses. Pitts gave a detailed, in-court description of his and Buckley's actions and confessed his own guilt. He was subjected to extensive cross-examination. Hence, his additional statement that he had pleaded guilty to the crime added nothing to his testimony. It was cumulative. To hold that this duplicative testimony prejudiced the defendant's case and requires a new trial is, in my opinion, and with deference to my brethren exalting form over substance and making a rule of evidence an end in itself. The result will be a lengthy new trial, considerable additional expense to the county, and unnecessary further delay in the final determination of a criminal case.
GILLESPIE, P.J., and ROBERTSON, J., join in this dissent.