KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶47. A prejudicial error occurred in this case. During
 
 voir dire
 
 examination, the prosecutor informed the potential jurors that Eric Sharkey's co-indictees already had pled guilty to the crime for which Sharkey was about to be tried. The circuit court took no curative action, even after one venireman announced-in the presence of the entire
 
 venire
 
 -his inability to be fair and impartial in light of "the other two being convicted." This Court's precedent directs us to reverse under these circumstances. With much respect to my learned colleagues, I dissent.
 

 ¶48. Eric Sharkey, Madison Magee, and Marvin Bolden were indicted for two counts of armed robbery and possession of a firearm by a convicted felon. Prior to Sharkey's trial, Magee and Bolden had pled guilty and were serving time for the
 same crime for which Sharkey was to be tried.
 

 ¶49. The following colloquy took place during
 
 voir dire
 
 examination:
 

 PROSECUTOR: Now, as I kind of referenced a minute ago,
 
 Mr. Sharkey was one of three people that has been indicted for this
 
 .... And the law in the [S]tate of Mississippi is that everybody gets their own day in court.... Today and tomorrow is Mr. Sharkey's day.... Is anybody going to hold it against the State of Mississippi or the defense,
 
 the fact that they did not get to hear the other two cases, Mr. Magee and Bolden
 
 ?
 

 ....
 

 Now,
 
 the reason you're not going to hear their case is because Mr. Bolden and Mr. Magee have already plead
 
 [sic]
 
 guilty to this crime and are currently serving a jail sentence
 
 . Does anybody - -
 

 DEFENSE: Objection to that. Your Honor, can we approach?
 

 THE COURT: Yes.
 

 (Bench conference not reported)
 

 THE COURT: I'm going to overrule it. Anybody can impeach a witness.
 

 ....
 

 PROSECUTOR:
 
 Now, given the fact that Mr. Magee and Mr. Bolden are serving a jail sentence on that
 
 , is anybody going to give - - automatically going to give their testimony less weight? Are you able to judge it just like you do every other piece of evidence that's come before you?
 

 Soon after the above exchange, the dialogue continued, in the presence of the entire
 
 venire
 
 , as follows:
 

 PROSECUTOR: Is there anything that you guys need us to know that you think may affect your ability to be fair and impartial in this case? Yes, sir. Number 42, Mr. Gonzalez.
 

 VENIREMAN: Yes, sir.
 

 PROSECUTOR: Yes, sir.
 

 VENIREMAN:
 
 I have a little trouble getting over the statement about the other two being convicted. I
 
 - -
 

 PROSECUTOR: May we approach on this matter, Your Honor?
 

 The remaining conversation consists of a bench conference that took place outside of the presence of the
 
 venire
 
 .
 

 VENIREMAN: I just wanted to be honest.
 
 I had an issue once I heard that statement
 
 . I've raised my kids that when you're flocked together, who you hang with, what they do, it's who you represent[;] it's who you are. Once I heard that, I'm honestly having an issue.
 

 PROSECUTOR: You think you may not be able to be fair to both sides?
 

 VENIREMAN: Once I heard that, in all honesty, my first thought in my mind was if he was with them there, they're obviously not in the right, and he's probably not in the right as well. So that's just the way I feel.
 

 PROSECUTOR: So you've kind of formulated an opinion already?
 

 VENIREMAN: Unfortunately, yes, sir, I have.
 

 PROSECUTOR: You feel it would be hard to set that aside?
 

 VENIREMAN: I actually paused - - through the whole questions, I was trying to figure that out in my mind, but I am having a hard time. Yes, sir. The first thing that came to my mind.
 

 THE COURT: There are no right answers or wrong answers. We just want truthful answers.
 

 PROSECUTOR:
 
 Since those two men have pled guilty and this man is here,
 

 it makes you feel that he's guilty also, is that what you're trying to say?
 

 VENIREMAN:
 
 Yes, sir
 
 .
 

 ¶50. Subsequently, the venireman was struck for cause, and Sharkey moved for a mistrial. The trial court not only denied the motion but also failed to give any curative instruction to the remaining
 
 venire
 
 members or the empaneled
 
 petit
 
 jury. This was error.
 

 ¶51. The longstanding rule in Mississippi is that when two or more people are indicted jointly for crimes arising from the same event or occurrence, a judgment of conviction against, or a plea of guilty by, one of them is not competent evidence against the party being tried.
 
 Robinson v. State
 
 ,
 
 465 So.2d 1065
 
 , 1068 (Miss. 1985) ;
 
 State v. Thornhill
 
 ,
 
 251 Miss. 718
 
 , 726-727,
 
 171 So.2d 308
 
 , 312 (1965) ("[T]he record of conviction of another person is not competent evidence to show the guilt of a defendant. The fact alone that one person is guilty of [a crime] is no proof that another person is guilty.").
 

 ¶52. On many occasions, this Court, employing strong language, has reversed and remanded cases when the conviction or guilty plea of a co-indictee had been revealed improperly to a jury.
 
 Johns v. State
 
 ,
 
 592 So.2d 86
 
 (Miss. 1991) ;
 
 Ivy v. State
 
 ,
 
 301 So.2d 292
 
 (Miss. 1974) ;
 
 McCray v. State
 
 ,
 
 293 So.2d 807
 
 (Miss. 1974) ;
 
 Buckley v. State
 
 ,
 
 223 So.2d 524
 
 (Miss. 1969) ;
 
 Pieper v. State
 
 ,
 
 242 Miss. 49
 
 ,
 
 134 So.2d 157
 
 (1961) ;
 
 West v. State
 
 ,
 
 169 So. 770
 
 (Miss. 1936) ;
 
 Pickens v. State
 
 ,
 
 129 Miss. 191
 
 ,
 
 91 So. 906
 
 (1922) ;
 
 Lynes v. State
 
 ,
 
 36 Miss. 617
 
 (1859).
 

 ¶53. In
 
 Pickens
 
 , three men, including Pickens, were charged with murder.
 
 Pickens
 
 ,
 
 91 So. at 906
 
 . At trial, the court allowed the guilty plea of one of the men and the conviction of the other into evidence.
 

 Id.
 

 This Court condemned the State's use of this evidence against Pickens: "It seems needless for us to say that the [trial] court committed
 
 grave and fatal
 
 error in permitting this testimony to be introduced by the [S]tate."
 

 Id.
 

 (emphasis added).
 

 ¶54. In
 
 Buckley
 
 , we observed the following:
 

 Appellant assigns as error the action of the trial court in overruling his objection to that part of the testimony of Pitts wherein he testified that he had been jointly indicted with Buckley on the charge of Kidnapping Jack Watkins and that he had plead [sic] guilty to that charge, and as a result of his plea of guilty, had been sentenced to serve a term of five years in the state penitentiary. The overruling of this objection and admission of this testimony was reversible error. The law is well settled in this state that whe[n] two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried.... Not only was this testimony designed to lead the jury to believe that since Pitts had plead [sic] guilty to the charge, that his co-indictee, Buckley, was also guilty, but it was also designed to bolster the testimony of Pitts.
 

 Buckley
 
 ,
 
 223 So.2d at 527-28
 
 .
 

 ¶55. In
 
 Ivy
 
 , the Court reiterated these principles:
 

 The jury thus had before it evidence of the co-indictee's conviction and sentence from which it could very likely conclude that Ivy was guilty because his associate and co-indictee was convicted and sentenced, or more modernly put, the jury could find that he was guilty by association.
 

 We have consistently held evidence of this nature to be
 
 inimical to fair trial
 
 .
 

 Ivy
 
 ,
 
 301 So.2d at 293
 
 (emphasis added).
 

 ¶56. These prior decisions all assign as error use of evidence of a co-indictee's conviction and sentence. That being beyond dispute, the question becomes whether the error requires reversal.
 

 ¶57. The State argues that the error here was harmless because the statement was made during
 
 voir dire
 
 and was not introduced into evidence. First, this Court has suggested that this type of error falls under a "definitive standard" that requires reversal as a violation of a defendant's right to a fair and impartial trial, rather than a "case-by-case evaluation of [harmless] error" analysis:
 

 The very essence of liberty and justice requires that fundamental rights be measured and enforced by certain standards and uniform rules. These standards should not be compromised to attain a good but temporary purpose
 
 [
 

 14
 

 ]
 
 since it is inevitable that some wrong will be found to exist under any rule, and extreme cases will arise making a departure from fixed principles seem advantageous for the moment. It is this Court's opinion, however, that adherence to a definitive standard will result in less injustice and enhance stability in law in the long run more than would a case-by-case evaluation of error to determine whether it was 'harmless,' 'probably harmless,' 'not so harmless,' 'harmful,' 'grossly harmful,' the last category equating to prejudice, requiring reversal.
 

 McCray
 
 , 293 So.2d at 809-10. The
 
 McCray
 
 Court made this decision after observing that this particular issue, which implicates a defendant's "fundamental right to a fair trial," cannot be deemed harmless, even when the evidence points heavily to the defendant's guilt:
 

 This is not one of those cases for the application of the rule that a conviction will be affirmed unless it appears that another jury could reasonably reach a different verdict upon a proper trial than that returned on the former one, but rather it is a case where the constitutional right of an accused to a fair and impartial trial has been violated. When that is done, the defendant is entitled to another trial
 
 regardless of the fact that the evidence on the first trial may have shown him to be guilty beyond every reasonable doubt
 
 . The law guarantees this to one accused of crime, and until he has had a fair and impartial trial within the meaning of the Constitution and Laws of the State, he is not to be deprived of his liberty by a sentence in the state penitentiary.
 

 Id.
 
 at 809 (emphasis added) (quoting
 
 Scarbrough v. State
 
 ,
 
 204 Miss. 487
 
 ,
 
 37 So.2d 748
 
 (1948) ).
 

 ¶58. Second, the prejudicial nature of the statement is not somehow lost because it was said during
 
 voir dire
 
 rather than in the evidentiary stage of trial. In
 
 McCray
 
 , the prosecutor revealed the co-indictee's conviction in his opening statement,
 
 id.
 
 at 807, and opening statements, like statements made in
 
 voir dire
 
 , do not constitute evidence.
 
 Slaughter v. State
 
 ,
 
 815 So.2d 1122
 
 , 1132 (¶ 53) (Miss. 2002).
 

 ¶59. Third, the reason that the Court has announced this rule many times is demonstrated by this record. The prosecutor gratuitously and improperly revealed that the codefendants, both of whom were State's witnesses, had been adjudicated
 guilty of the offense for which Sharkey was about to be tried. In response to the prosecutor's revelation, a potential juror said, in the presence of the entire venire, "I have a little trouble getting over the statement about the other two being convicted." During the subsequent bench conference, the venireman affirmed the following statement: "Since those two men have pled guilty and this man is here, it makes you feel that he's guilty also." The venireman articulated, clearly and succinctly, the principal reason Mississippi courts have adhered to the rule for more than one hundred and fifty years.
 

 ¶60. The other reason courts disallow the prosecution's revelation of the convictions or guilty pleas of co-indictees is that they inform the jury that a judicial determination has been made respecting the
 
 corpus delicti
 

 [15]
 
 of the crime.
 
 West
 
 ,
 
 169 So. at 770
 
 . This signals to the jury that it need not decide whether a crime has occurred, only whether
 
 this
 
 defendant had a part in committing it. This is a problem that this Court has found prejudicial.
 
 [16]
 

 ¶61. Even if this Court were inclined to overrule its holding in
 
 McCray
 
 , which it has not done, the error in the present case cannot be deemed harmless. This Court has suggested that, under the right circumstances, a statement pertaining to the guilt of a co-indictee can be cured by proper and timely instruction from the trial judge. In
 
 Reid v. State
 
 ,
 
 266 So.2d 21
 
 , 27 (Miss. 1972), the district attorney revealed, during
 
 voir dire
 
 , that a codefendant of Jimmy Reid had been tried and sentenced the week before his trial began. Reid moved for a mistrial, which was denied.
 

 Id.
 

 at 28
 
 . In affirming that decision, this Court explained that "[t]he trial judge promptly instructed the jury to disregard any statement relative to the trial of anyone else and did everything in his power to erase from the minds of the jury the remarks of the district attorney."
 

 Id.
 

 The trial court also granted a jury instruction that further admonished the jury to "give absolutely no thought to the verdict of the former jury[.]"
 

 Id.
 

 This Court determined that any prejudice resulting from the error had been cured by the trial court.
 

 Id.
 

 ¶62. But
 
 Reid
 
 does not extend to those cases in which the trial court undertakes no curative action after a defense objection. Indeed, courts throughout the United States have recognized that, after a co-indictee's guilt is revealed, a trial court's failure to instruct the jury or to otherwise cure the prejudice necessarily renders the error reversible as opposed to harmless.
 
 Babb v. United States
 
 ,
 
 218 F.2d 538
 
 , 542 (5th Cir. 1955) ;
 
 State v. Ferrone
 
 ,
 
 96 Conn. 160
 
 ,
 
 113 A. 452
 
 , 455 (1921) ;
 
 State v. Fenton
 
 ,
 
 499 S.W.2d 813
 
 , 816 (Mo. App. 1973) ;
 
 Pryor v. State
 
 ,
 
 34 Okla.Crim. 131
 
 ,
 
 245 P. 669
 
 , 672 (1926) ;
 
 State v. Peters
 
 ,
 
 82 R.I. 292
 
 ,
 
 107 A.2d 428
 
 , 432 (1954).
 

 ¶63. Respectfully, I disagree with the special concurrence's characterizations of some of the changes in our State's criminal practice.
 
 [17]
 
 My distinguished colleague focuses
 heavily on the use of a co-indictee's conviction, confession, or guilty plea to uncover bias. But the probing of jurors for bias, as well as the use of evidence to show bias, are phenomena that predate many of the cases cited herein.
 
 Vicksburg Ice Co. v. Delta Ice Co.
 
 ,
 
 119 So. 824
 
 , 824 (Miss. 1929) ;
 
 Beason v. State
 
 ,
 
 34 Miss. 602
 
 , 604 (1857). So our judicial ancestors were well aware of the issue of bias when they "held evidence of this nature to be inimical to [a] fair trial."
 
 Ivy
 
 ,
 
 301 So.2d at 293
 
 .
 

 ¶64. The special concurrence also implies that our one-hundred-and-fifty year old rule somehow restricts defendants from addressing the guilt of their co-indictees. However, the accused is not hamstrung by the rule. As noted in
 
 McCray
 
 and
 
 Ivy
 
 , defendants have a "constitutional right" that protects them from having the guilt of their co-indictee made known.
 
 McCray
 
 , 293 So.2d at 809 (This "is a case where the
 
 constitutional right
 
 of an accused to a fair and impartial trial" has been implicated.) (emphasis added);
 
 see also
 

 Ivy
 
 ,
 
 301 So.2d at 293
 
 . If the accused determines that the benefit of potentially uncovering bias outweighs the prejudice from which he enjoys constitutional protection, then he is free to waive that constitutional protection.
 
 Hannah v. State
 
 ,
 
 943 So.2d 20
 
 , 24 (¶ 8) (Miss. 2006) (noting circumstances under which constitutional rights can be waived).
 

 ¶65. By contrast, the State has no constitutional right against having the guilt of a defendant's co-indictee exposed. "[T]he United States Constitution protects individuals from government action[,]" not the government from individual action.
 
 Dissmeyer v. State
 
 ,
 
 292 Kan. 37
 
 ,
 
 249 P.3d 444
 
 , 449 (2011). The constitutional bulwark is one that the accused can breach, but not the State.
 
 [18]
 
 The special concurrence denominates this analysis as one-sided, and I wholeheartedly agree with that characterization. The constitutional rights, liberties, and protections afforded the people, as against the government, are indeed one-sided and were so intended by the founders. As the Preamble to the United States Constitution articulates, the "Blessings of Liberty" are secured onto "the People," not the government.
 
 [19]
 

 ¶66. I fail to see how the prejudice this issue causes is at all diminished by any changes in our criminal practice, especially when this record so poignantly demonstrates otherwise. Although the prosecutor's purpose in this case ostensibly was to uncover bias-as opposed to offering the prior guilty pleas as substantive evidence-the revelation of the prior guilty pleas induced a
 
 venire
 
 member to believe the defendant was guilty by association with his already convicted codefendants. Since such a result is possible and, moreover, actually occurred in this case, how can we say that merely offering the evidence for a different purpose mitigates its damage?
 

 ¶67. Despite this problem, courts have held, as the special concurrence notes, that it is possible for the prejudice to be cured, but only when trial courts take timely curative action.
 
 United States v. Davis
 
 ,
 
 487 F.2d 112
 
 , 120 (5th Cir. 1973) ("Both this [c]ourt ... and other courts ... have stressed as controlling the existence and adequacy of the trial court's cautionary instructions in a situation where the jury is made aware of a codefendant's guilty plea entered prior to giving evidence for the government.") (citations omitted).
 
 See
 

 United States v. Marroquin
 
 ,
 
 885 F.2d 1240
 
 , 1247 (5th Cir.1989) ("A witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose
 
 and a proper limiting instruction is given
 
 .") (emphasis added).
 
 See also
 
 ,
 
 United States v. Valuck
 
 ,
 
 286 F.3d 221
 
 , 228 (5th Cir. 2002) (noting the importance of a limiting instruction);
 
 Reid
 
 ,
 
 266 So.2d at 27
 
 (same).
 

 ¶68. In the case at hand, though, no limiting or cautionary instruction was given by the circuit court. No steps were taken to cure the prejudice inflicted upon Eric Sharkey, and many of the foregoing decisions found reversible error under less deleterious circumstances.
 

 ¶69. To reiterate, the prejudice in this case was compounded by Juror Number 42's announcement, in the presence of the entire
 
 venire
 
 , that "I have a little trouble getting over the statement about the other two being convicted." In light of this statement, the other prospective jurors were left to wonder whether they too had trouble getting over the revelation, especially in the absence of a judicial admonition to disregard it. On this record, we cannot know how the jurors were affected, because they were not polled, and the circuit court did not otherwise instruct the jurors following the defense's objection. The circuit court should have ordered a mistrial. In the absence of such a ruling, at the least it should have admonished the jury in accordance with
 
 Davis
 
 and
 
 Reid
 
 . It cannot be said that this error was harmless beyond a reasonable doubt.
 
 McCray
 
 , 293 So.2d at 809 ("All dangers emanating from the use of this incompetent evidence would necessarily militate against a fair and impartial trial under the laws of this state.").
 
 See also
 
 ,
 
 United States v. Harrell
 
 ,
 
 436 F.2d 606
 
 , 617 (5th Cir. 1970) ("[W]e think that the evidentiary purpose ordinarily to be served by proof of a co-defendant's plea of guilty is so shadowy, so insubstantial that it would be the better practice in run-of-the-mill cases to exclude such proof altogether.").
 

 ¶70. We would do well to heed the pronouncements of our early Court:
 

 The legal theory of a trial by jury is the selection of an impartial body from the
 county, and its trial of the case free from any influence except that produced by the testimony and law and legitimate argument, and any subjection of the jury to any other influence is carefully guarded against. Twelve men must concur in preferring a charge of felony before one can be held to answer; and twelve men, elected, impaneled, and sworn to try the issue joined, must concur in a verdict of guilty before the humblest can by our law be deprived of his liberty; and such is the jealousy with which trial by jury is guarded that, when it is made to appear that
 
 anything has occurred which may have improperly influenced the action of the jury
 
 , the accused will be granted a new trial,
 
 although he may appear to be ever so guilty
 
 , because it may be said that his guilt has not been ascertained in the manner prescribed by law, and every one is to be judged by the law.
 

 Lamar v. State
 
 ,
 
 64 Miss. 687
 
 , 692,
 
 2 So. 12
 
 , 14 (1887) (emphasis added).
 

 ¶71. Our precedent, and the principles of a fair and impartial trial espoused by the Constitutions of the United States and Mississippi, demand reversal of this conviction. Because the majority does otherwise, I respectfully dissent.
 

 KING, P.J., JOINS THIS OPINION.
 

 The "good but temporary purpose" to which the
 
 McCray
 
 Court referred was affirming the judgment of conviction against Leroy McCray, because "abundant evidence establishing the commission of a crime [had been adduced.]"
 
 Id.
 
 at 808.
 

 Corpus delicti
 
 translates literally as the "body of the crime," which means the collection of evidence used to establish the fact that a crime has occurred, as distinguished from the person who committed it.
 
 Corpus delicti
 
 , Black's Law Dictionary (10th ed. 2014).
 

 We do not speculate whether this testimony was introduced for the purpose of deliberately prejudicing McCray's defense by the use of evidence which this Court has repeatedly condemned or that it was introduced under the mistaken belief that the conviction of a co-indictee was
 
 the best evidence that a crime had been committed
 
 so that McCray's guilt as an accessory could be established since
 
 in either event it was prejudicial
 
 .
 

 McCray
 
 , 293 So.2d at 808 (emphasis added).
 

 For example, the special concurrence discusses how multi-defendant, multi-count prosecutions now comprise much of the criminal dockets. However, multi-defendant prosecutions existed in Mississippi before it became the nation's twentieth state.
 
 Statutes of the Miss. Territory
 
 , § 47 (1807). And one of the first few cases decided under statehood recognizes the propriety of multi-defendant prosecutions.
 
 State v. Blennerhassett
 
 ,
 
 1 Miss. 7
 
 , 16 (1818).
 

 Mult-count indictments first were authorized by statute effective July 1, 1986. Miss. Code. Ann. § 99-7-2(1) (Rev. 2015);
 
 see also
 

 McCarty v. State
 
 ,
 
 554 So.2d 909
 
 , 914 (Miss. 1989) (discussing multi-count indictments and the enactment of Section 99-7-2(1) ). That statute has been superseded by Mississippi Rule of Criminal Procedure 14.2.
 

 That said, if the defendant opens the proverbial door to a co-indictee's guilt, then it is axiomatic that the State then would have an opportunity to address the issue as well.
 

 In
 
 Isom v. Mississippi Central Railroad Co
 
 .
 

 ,
 
 36 Miss. 300
 
 , 311 (1858), this Court wrote artfully and accurately on the protections that the Constitution affords the individual:
 

 But the natural tendency of power and wealth to accumulate inordinately, the strong proclivity of every department in popular governments, to consult the good of the many, at the expense of the rights of the few, here as elsewhere, in all time past, leave but little hope that the utmost caution, formally embodied in written constitutions, will ever secure that perfect protection to individual right, which was designed, and is desired, by the great body of the people.... Hence the great necessity, on the part of the judicial department, to scrutinize well, not only the conduct of the other departments, in cases appealing to it for protection against such encroachments, but especially to guard itself against the natural influences, which the clamors of the powerful many are calculated to exert. So that the humblest, weakest citizen, claiming a legal right, may assert it, against the interests or combinations of the many, or the public even, with a full confidence that neither public necessity, public utility, nor public convenience, the pleas of all despotism, shall prevail against a single private right, secured by our constitution and laws.