616 So.2d 304 (1993)
Joan WHITE
v.
STATE of Mississippi.
No. 91-KA-590.
Supreme Court of Mississippi.
March 25, 1993.
*305 George D. Runnels, Magee, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC
BANKS, Justice for the Court:
This criminal appeal involves a burglary, wherein it is alleged that White was the mastermind. She asserts that the evidence was insufficient to sustain a conviction and, alternatively, that the court committed reversible error in permitting the jury to learn that one of her accusers had entered a plea of guilty for his role in the crime. We find no merit to her contentions and affirm.

I
On January 30, 1990, a Simpson County Grand Jury indicted Joan White, Ervin Sullivan and Mike Crews for the burglary of a dwelling under Miss. Code Ann. § 97-17-19 (1972)[1]. In particular, the indictment charged White, Sullivan and Crews with the November 30, 1989, break-in of a Simpson County dwelling and with the intent to remove items of value from the dwelling without the knowledge or consent of the dwelling's occupant.
Trial was held on March 19 and 20, 1991. The jury found White guilty as charged. White filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. These motions were denied, and White was sentenced to a term of three years with 30 months suspended and six months to serve. White filed a timely notice of appeal to this Court and raises the following issues:
1. Did the trial court's refusal to grant White's motion for a mistrial on the grounds Crews, a co-indictee, pled guilty to the same crime which White is charged constitutes reversible error?
2. Did the trial court commit further error in refusing to grant White a directed verdict at the close of the State's case-in-chief?
3. Did the trial court commit further error in refusing to grant White's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial following the close of the trial?

II
It is clear from the testimony in this case that White did not participate in the burglary itself. White, the State alleged, master-minded the plan, but stayed at home while her accomplices carried out the burglary.[2] Thus, the State relied greatly on testimony given by perpetrators of the burglary. During an explanatory statement to the venire, the State informed the panel that White's accomplices had earlier pled guilty to the burglary at issue in this appeal. White objected to this statement and moved for mistrial. The trial court overruled the objection and denied the motion.
Michael Crews testified that he broke into the home on November 30, 1989, and stole firearms from the gun cabinet (which was in the den) and boxes of tools from the utility room. Crews stated it was White's idea to break into the home and that "[i]f we got caught, [White said] she could get us out of it." He also testified that White approached him and Ervin Sullivan several times weeks before November 30 concerning the burglary.
Crews testified that White instructed him to steal the tools and the firearms. White supplied Crews and Sullivan with rubber gloves to wear during the commission of the crime. She also told Crews to ransack the dwelling in an effort to confuse the owners upon their return home.[3] According to Crews he refused to do this, but his *306 accomplice, Ervin Sullivan, pulled drawers out of their cabinets.
Crews testified that he pled guilty to burglary and was sentenced to four years probation. White, at this time, renewed her motion for mistrial based on the fact that the jury had been informed, once again, of the fact that Crews had pled guilty to burglary, and received a sentence.[4] The motion was denied.
On cross-examination, Crews admitted to giving two statements concerning the burglary. One statement was given to police, and a subsequent statement was written in the presence of White and later notarized. While the custodial statement inculpated White, the second statement claimed White knew nothing about the burglary. However, Crews testified he merely copied that statement in his own hand from a statement prepared by White. The witness claimed he recanted his custodial statement, as he believed White could help him get out of trouble, if he stated she had nothing to do with the burglary.
On re-direct examination, Crews testified that his custodial statement was a correct recitation of the facts surrounding the burglary and that White was involved in planning the burglary.[5]
The State also called Erwin Sullivan  the third and final accomplice. Sullivan testified he knew White and began to meet with White frequently before the burglary occurred. Like Crews, Sullivan said he would visit White at her home and that he was acquainted with her sons. Sullivan's testimony mirrored that of Crews in all significant details.
Unlike the examination of Crews, however, there was no mention of Sullivan's criminal status regarding the burglary during his examination.
Alana Blair, a resident of the burglarized home, testified that White called her at least two or three times on the morning of the burglary.[6] According to Blair the purpose of the calls was to ascertain whether Blair had left home for work. White asked Blair to phone her when she arrived at work and, at some point before 12:30 p.m., Blair did speak with White by telephone.
After arriving home, Blair testified she phoned White and informed her that her house had been burglarized. White, according to Blair's testimony, specifically asked Blair if the tools were missing from the utility room. This question led Blair to check the utility room to determine if the tools were missing. Coming back to the phone, Blair told White that, in fact, the tools were missing. At that point, White asked Blair not to report the tools as stolen to the police. However, Blair responded that would not be possible as her husband would insist on reporting the theft of the tools.
White denied the allegations of Crews and Sullivan that she discussed the burglary with them in the wee hours of November 30, 1989. She stated she had no knowledge that Crews and Sullivan were involved in the burglary until hours before she was arrested herself on December 2, 1989. White denied she told Blair not to tell the police that the tools were missing. Regarding the statement Crews wrote recanting the portion of the statement he made to police during custodial interrogation, White testified that she merely helped Crews spell words when he asked her for help. She stated she did not provide a copy of a letter for Crews to copy. Finally, White testified she also did not make any threats or promises to Crews regarding the statement.

*307 III
White seeks reversal based on the disclosure that Crews and Sullivan had entered guilty pleas to the burglary. White cites three cases in support of this assignment: Ivy v. State, 301 So.2d 292 (Miss. 1974); Buckley v. State, 223 So.2d 524 (Miss. 1969); State v. Thornhill, 251 Miss. 718, 171 So.2d 308 (1965). The State, relying on Johns v. State, 592 So.2d 86 (Miss. 1991); Henderson v. State, 403 So.2d 139 (Miss. 1981) and Griffin v. State, 293 So.2d 810 (Miss. 1974), concedes error. We are, of course, not bound by concessions as to issues of law. Lane v. Woodland Hills Baptist Church, 285 So.2d 901, 905 (Miss. 1973).
In four of the cases relied upon, Ivy, Johns, Henderson, and Griffin, the witness had been tried by a jury and found guilty of the same crime for which the defendant was being tried. The danger at issue in these cases is that one jury would rely upon the judgment of a prior jury in reaching its decision. These cases are distinguishable, however, because we are dealing with a plea of guilty in the instant case; that is, a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals.
Moreover, whether an error in admitting this evidence is sufficiently prejudicial to warrant reversal may be resolved differently where the offending evidence is no more than a repetition of what is said by the witness before a jury and subject to cross examination, as opposed to evidence of the collective judgment of another jury. Finally, where, as here, the issue of the witness' guilt is based on conduct not involving the defendant and not at issue in the trial where the witness testifies, the reason for the prohibition loses its force.
Buckley and Thornhill involve guilty pleas. Thornhill, however, is easily distinguishable. There the state sought to introduce the record of conviction of two co-defendants without calling them as witnesses. Thornhill, 251 Miss. at 721, 726-27, 171 So.2d at 312. Obviously such evidence is inadmissible as the guilt or innocence of co-defendants does not per se bear upon the question of guilt of the person on trial. Moreover, the evidence was hearsay if offered to prove the truth of the matters asserted by the plea of guilt. Miss.R.Evid. 801(c) (Comment: This rule "codifies and simultaneously clarifies the common law definition of hearsay.") In Buckley, the witness was a co-indictee who testified. Buckley, which pre-dated our Rules of Evidence, will be discussed below.
We turn to an analysis of the question whether the admission of the testimony in question was error. It is essentially an evidentiary issue.
Federal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes. United States v. Medley, 913 F.2d 1248, 1257-58 (7th Cir.1990); United States v. Davis, 766 F.2d 1452, 1456 (10th Cir.), cert. denied 474 U.S. 908, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985); United States v. Wiesle, 542 F.2d 61, 62-63 (8th Cir.1976); State v. Padgett, 410 N.W.2d 143, 146 (N.D. 1987); People v. Brunner, 797 P.2d 788, 789 (Colo.Ct.App. 1990); see also State v. Braxter, 568 A.2d 311, 316 (R.I. 1990) (guilty plea of accomplice in trial of defendant on same charge admissible when introduced to impeach accomplice, but inadmissible to demonstrate guilt of defendant); State v. Rothwell, 308 N.C. 782, 303 S.E.2d 798, 800-01 (1983) (guilty plea of co-conspirator admissible when admitted for "legitimate purpose" but never as evidence of defendant's guilt); Greer v. State, 188 Ga. App. 808, 374 S.E.2d 337, 338 (1988) (no error for admission of accomplice's guilty plea to same crime which defendant is charged where the plea was introduced during the accomplice's testimony and the accomplice was subject to cross-examination by defendant).
When Crews testified he pled guilty to burglary, he gave evidence of a prior consistent statement. Miss.R.Evid. 801(d)(1) would control here:

*308 (d) Statements Which Are Not Hearsay. A statement is not hearsay if:
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with his testimony and offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him[.]
Because Crews' admission that he pled guilty is a statement consistent with his testimony, it would have to fit under the hearsay exception at Subsection (d)(1)(B) for it to be admissible.
We have had the occasion to treat this rule, and we relied upon pre-rule authority to uphold the exclusion of a prior consistent statement offered prior to cross-examination or an attack on the witness' credibility. Irving v. State, 498 So.2d 305, 316-17 (Miss. 1986); citing Stampley v. State, 284 So.2d 305, 307-08 (Miss. 1973). In Stringer v. State, 548 So.2d 125, 132 (Miss. 1989), on the other hand, we determined the elicitation of a prior consistent statement on re-direct examination does not violate Rule 801(d)(1)(B) when that testimony comes in response to attempts by the defendant to impeach the witness based on improper influence during cross-examination.
This Court has held that admission of a prior consistent statement of a witness where the veracity of the witness has been attacked is proper but "should be received by the court with great caution and only for the purpose of rebuttal so as to enable the jury to make a correct appraisal of the credibility of the witness." Stampley, 284 So.2d at 307. In Stampley, the witness, an accomplice of the defendant, was impeached by the defendant and, on re-direct, was "bolstered" by testifying he had given a statement to the police inculpating the defendant. Id. at 306-07. The Court held that because the witness had been impeached by prior inconsistent statements and either denied or explained those statements, examination regarding prior consistent statements on redirect was admissible. Id. at 307-08.
Here the prosecutor jumped the gun. Crews' guilty plea was elicited prior to any attack on his credibility. Under our precedents, then, the testimony should have been excluded. The question arises, then, whether this error is sufficient to require reversal. We think not.
It was clear from the beginning that Crews' credibility was central to this case. His credibility, as well as that of Sullivan, was vigorously attacked on cross-examination. Prior inconsistent statements from Crews were elicited, admitted and explained. Moreover, Crews was questioned extensively about the nature of any sentencing arrangement he received from the state. It would strain credulity to suggest that, but for the introduction of the guilty plea, this attack on Crews would not have been made. Finally, the question of Crews' guilt was not a disputed fact at the trial.[7] Under these circumstances, the premature references and testimony cannot be deemed error sufficient to warrant reversal.
We must acknowledge that in Buckley the witness had pled guilty, and a majority of that Court found reversible error. Buckley, 223 So.2d at 529. Three justices dissented. Justice Ethridge, writing for *309 the dissenters, embraced much the same rationale rendered here:
The fact of a plea of guilty by a co-indictee is not generally admissible in evidence against another co-indictee. But the real question here is whether, considering the entire record, its admission was harmful to defendant and warrants a reversal. Reversible error might well exist where an absent co-indictee's previous conviction or guilty plea is introduced in evidence through court records. Pickens v. State, 129 Miss. 191, 91 So. 906 (1922). Prejudicial error might also exist where a co-indictee takes the stand and testifies to a previous conviction or guilty plea without making an in-court confession. However, in the instant case these prejudicial factors do not exist. Pitts testified in great detail about his and Buckley's kidnapping and beating of the state's witness, Watkins. Without his testimony about any previous guilty plea, Pitts made a detailed, in-court confession of his guilt. He clearly established the fact that he was guilty of the crime of kidnapping. Moreover, he was subjected to a searching cross-examination by the defendant himself.
When Pitts went one step further on direct examination and testified that he had previously pleaded guilty to the same crime, he added nothing to his otherwise competent testimony. That evidence was mere surplusage, and although incompetent, was not, in my judgment, sufficient to establish an error justifying reversal of the conviction.
223 So.2d at 529. As well, this Court found reversible error in Johns where evidence that the witness/accomplice had been convicted was introduced, notwithstanding the fact that the conviction was based on facts not involving the defendant and the fact that the witness was attacked on cross examination regarding the nature of the arrangement between her and the state. Johns, 592 So.2d at 90-92. It should suffice to say that, whatever the harm found by the majorities based on the facts in Buckley and Johns, we do not perceive similar harm here. To once again borrow from Justice Ethridge,
... rules of evidence are not arbitrary, but are merely instruments for the fact-finding process, based on rational purposes and practical experience. Accordingly, violation of a rule of evidence should not result in the costly and time-consuming penalty of a new trial, unless it affirmatively appears from the whole record that a miscarriage of justice has resulted.
223 So.2d at 530.

IV
As to White's allegations of insufficient evidence, we find that because there is evidence in the record "of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb." Campbell v. State, 566 So.2d 475, 476 (Miss. 1990) (quoting Garrett v. State, 549 So.2d 1325, 1331 (Miss. 1989)). This Court cannot reverse a verdict and discharge a defendant "short of a conclusion on our part that given the evidence, taken in light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." May v. State, 460 So.2d 778, 781 (Miss. 1984) (citation deleted). These assignments of error are without merit.

CONCLUSION
For the foregoing reasons we affirm the judgment of the circuit court.
CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF THREE (3) YEARS, WITH THIRTY (30) MONTHS SUSPENDED, AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, ROBERTS and SMITH, JJ., concur.
NOTES
[1] Miss. Code Ann. § 97-17-19 (1972) reads:

Every person who shall be convicted of breaking and entering any dwelling house, in the day or night, with intent to commit a crime, shall be guilty of burglary, and be imprisoned in the penitentiary not more than ten years.
[2] See Miss. Code Ann. § 97-1-3 (1972).
[3] According to Crews, the logic here was to have the owners looking through the house for items that were missing rather than inspect the utility room where the tools were kept.
[4] The court allowed the State to ask Crews (1) if he had been convicted of the burglary at issue; (2) if he was sentenced and (3) the sentence he received.
[5] The State effectively put to rest a good deal of doubt regarding which of Crews' statements was a truthful representation of the events of November 30, 1989, when it called June Green, a woman who was cleaning White's house when Crews allegedly copied the statement from White's handwriting to his. Green testified that she witnessed Crews copy and take dictation from White in the composition of his second "statement."
[6] Crews and Sullivan were at White's home when these calls were made and testified to overhearing White's portion of the conversation.
[7] Under the circumstances the plea of guilty had little, if any, probative value on any issue. It was cumulative evidence of an undisputed fact  Crews' guilt. While such evidence may be amenable to introduction under the aegis of Miss.R.Evid. 801(d)(1)(B) in some circumstances, here it could be argued that Crews' credibility was never attacked as to any issue or in any manner to which the plea of guilty would be responsive. See, United States v. Montague, 958 F.2d 1094 (D.C. Cir.1992) (discussing generally the use of prior consistent statements in response to an attack on the credibility of a witness). Nevertheless, it is difficult to imagine examination concerning Crews' motive for testifying against White differently than a signed prior statement without touching upon the disposition of the charges against him for his role in the offense in question.