# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01303-SCT

## CONSOLIDATED WITH

## NO. 97-KA-00778-SCT

*MICHAEL PALM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/1997 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED-9/30/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/21/99 |

## BEFORE PRATHER, C.J., MILLS AND COBB, JJ.

## MILLS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Michael Palm appeals to this Court from his conviction of grand larceny in the Circuit Court of Scott County. His August 1, 1997, conviction was for the October, 1996 theft of a Yamaha Timberwolf 250 All Terrain Vehicle (hereinafter Yamaha) in violation of Miss Code Ann. § 97-17-41(1994) for which he was sentenced to serve a term of five years in the Mississippi Department of Corrections and to pay a fine of $5,000. In appealing his conviction, Michael Palm asserts three issues for review by this Court. The issues are as follows:

**I. PROSECUTORIAL ABUSE OF VOIR DIRE DENIED APPELLANT A FAIR TRIAL.**

**II. INTRODUCTION OF EVIDENCE THAT PROSECUTION WITNESS JARVIS WRIGHT, APPELLANT'S CO-INDICTEE AND ALLEGED ACCOMPLICE, WAS CONVICTED OF THE SAME CRIME APPELLANT WAS CHARGED WITH, DENIED APPELLANT A FAIR TRIAL.**

**III. THE COURT ERRED IN ADMITTING THE CONFESSION BECAUSE NO SUPPRESSION HEARING WAS HELD ON THE VERSION OF THE CONFESSION TOLD TO THE JURY AND BECAUSE THE DEPUTY SHERIFF'S STATEMENT DURING INTERROGATION WAS IMPROPER.**

## STATEMENT OF THE FACTS

¶2. Michael Palm was indicted, along with several others, including Jarvis Marquis Wright, on February 5, 1997, for the October, 1996, grand larceny of two four-wheel, all terrain vehicles (ATV). The first ATV, a Honda 250, belonged to Sammie Lovett, and the second, a Yamaha Timberwolf 250, belonged to David Weeks. Palm entered a plea of not guilty and was tried in two separate trials for grand larceny of the two vehicles. In the trial where he was charged with grand larceny of Lovett's Honda, Palm was convicted and sentenced to serve a term of five years in prison and to pay a fine of $5,000. He appealed that conviction, and the Mississippi Court of Appeals affirmed. See *Palm v. State*, 724 So. 2d 424 (Miss. Ct. App.1998). That was a final decision, and this Court does not address the merits of that case in this opinion.

¶3. The case we are concerned with today is the grand larceny of the ATV belonging to David Weeks, a Yamaha Timberwolf. To the charge of grand larceny of Weeks's Yamaha, Palm again entered a plea of not guilty. Deputy Sheriff Marvin Williams testified that Palm confessed to stealing Weeks's Yamaha. Palm subsequently took Deputy Williams to the site where Weeks's Yamaha and Lovett's Honda were hidden. In addition to Williams testifying about the Palm confession, Jarvis Wright, Palm's accomplice who previously entered a plea of guilty and was given a two-year prison sentence, testified that he was with Palm when he absconded with David Weeks's Yamaha.

¶4. The jury convicted Palm of grand larceny, and the trial court sentenced him to serve a term of five years in the Mississippi Department of Corrections. That sentence was to run consecutively with any prior sentence. Palm appeals to this Court from the conviction of grand larceny for the theft of David Weeks's Yamaha.

## DISCUSSION

### I. WAS APPELLANT DENIED A FAIR TRIAL DUE TO PROSECUTORIAL ABUSE OF VOIR DIRE?

¶5. Although Palm now objects to certain statements made during voir dire, no such objection was made during trial. The failure to make a contemporaneous objection waives the right of raising the issue on appeal. *Ballenger v. State*, 667 So.2d 1242, 1259 (Miss.1995). "[A] voir dire examination of jurors must be discretionary with the circuit judge, and in the absence of objection we have no way of knowing the degree of influence it had, if any, on the ultimate verdict." *West v. State*, 485 So. 2d 681, 685 (Miss. 1985). A trial court is not put in error unless it had an opportunity to pass on the question. *Boutwell v. State*, 165 Miss. 16, 143 So. 479, 482 (1932). Although we find that Palm is procedurally barred from asserting this objection for the first time on appeal, we will, nevertheless, discuss the merits of his argument.

¶6. URCCC 3.05 discusses the process of voir dire and states as follows:

**RULE 3.05 VOIR DIRE**

In the voir dire examination of jurors, the attorney will question the entire venire only on matters not

inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked. Attorneys will not offer an opinion on the law. The court may set a reasonable time limit for voir dire.

¶7. Palm asserts that he was denied a fair trial due to the prosecutorial abuse of voir dire. He claims that the prosecution violated URCCC 3.05 with three separate statements. The first alleged violation came in the form of a statement made by the prosecution which was as follows:

It happens from time to time that there may be a conflict in the evidence. State's witnesses may testify to a certain set of circumstances, and if the Defendant chooses to call witnesses, they may testify to something different. But, do you understand that a mere conflict in the evidence does not necessarily create a reasonable doubt? That's why we have twelve jurors, to sit up here and listen to the case, to resolve that conflict and decide what the truth is.

¶8. Palm asserts that this statement required the jury to resolve all conflicts, thereby causing them to do away with the consideration of reasonable doubt. He further asserts that this statement violates URCCC 3.05 because it offers an opinion and misstates the law. Other than his cite to URCCC 3.05 he cites no relevant authority for his argument.

¶9. As this Court explained in *Puckett v. State*, 737 So.2d 322,332 (Miss.1999) "[t]he purpose of voir dire is to select a fair and impartial jury. Because the human element is always present, the process can by no means ever be perfect. Therefore, it is the trial court's duty to ensure that although not perfect, the jury panel that is finally empaneled can render an impartial verdict ..." The preceding statement was clearly made to determine whether the potential jurors understood their function and how they were to evaluate the evidence. This is the very purpose of voir dire. There was no error in ascertaining if the potential jurors knew what was expected of them in order to determine their suitability to serve as jurors. Additionally, the statement does not erode the consideration of reasonable doubt. It simply clarifies that conflicts in the evidence do not equate to reasonable doubt. Furthermore, there is nothing in the transcript that would require the venire persons to pledge a particular verdict in violation of URCCC 3.05.

¶10. The second statement to which Palm objects was as follows:

So, my final question to you is simply this: After you have heard all of the evidence and you are satisfied the State has proven the Defendant's guilt beyond a reasonable doubt, can you tell me that you will act upon your oath as jurors at that point and return a verdict of guilty? Other than the people who have already indicated they have a situation, they are either related to or friends with the Defendant and might not want to sit on this particular jury, can the rest of you return a verdict of guilty as charged?

¶11. Palm objects to this statement, asserting that is was a direct requirement that the jurors pledge a verdict and was therefore in violation of URCCC 3.05. Again, Palm cites no authority for his argument. In addition to the foregoing, he asserts that the following question was an implied request that the jury pledge a verdict:

The Defendant as he sits here right this minute, is clothed with a presumption of innocence. The law says at this point we have to presume he is innocent, but do you understand once we go forward with

the evidence and produce testimony to prove to your satisfaction his guilt, then at that point, he no longer enjoys that presumption of innocence? Does everyone understand that?

¶12. URCCC 3.05 specifically prohibits "hypothetical questions requiring any juror to pledge a particular verdict." This Court, in *West v. State*, 553 So.2d 8, 21 (Miss. 1989), examined the problem of when an attorney presents hypothetical facts to the prospective jurors during voir dire and questions them on their ability to return a verdict in his favor should he prove those facts. The Court noted that in *West I* prosecuting attorneys were directed to "avoid questions seeking a promise or commitment from the jury to convict if the State proved certain facts." *West*, 553 So.2d at 21, (citing *West I*, 485 So.2d at 686). In the instant case the jury was not given a hypothetical set of facts. They were asked if they would be *able* to return a guilty verdict if the prosecution proved their case "to the satisfaction of the jury."

¶13. Additionally, Palm objects to the prosecution's mention that the State prove its case "to the satisfaction of the jury." He asserts that this statement destroys the consideration of reasonable doubt and misstates the law because proof of guilt "to the satisfaction of the jury" does away with the presumption of innocence. Again Palm cites no authority. An instruction was included which detailed the fact that the burden of proof never shifts from the prosecution to the defendant. In light of the prosecution's statement alluding to the fact that the defendant's guilt must be proved beyond a reasonable doubt and that seven jury instructions required the jurors to find the defendant guilty beyond a reasonable doubt, this Court finds that any error in the statement was harmless. Since there was not one single instance of prosecutorial abuse of voir dire, this entire issue is without merit.

## II. INTRODUCTION OF EVIDENCE THAT PROSECUTION WITNESS JARVIS WRIGHT, APPELLANT'S CO-INDICTEE AND ALLEGED ACCOMPLICE, WAS CONVICTED OF THE SAME CRIME APPELLANT WAS CHARGED WITH, DENIED APPELLANT A FAIR TRIAL.

¶14. Jarvis Wright testified that he entered a plea of guilty and was given a two year prison sentence for his part in the larceny for which Palm also stood trial. The State elicited this testimony from Wright, but Palm did not object. Although we are not required to discuss the issue for lack of a contemporaneous objection, we will address the merits of his argument. See *Williams v. State*, 684 So. 2d 1179, 1189 (Miss. 1996). The prosecutor elicited testimony from Wright that he was at the scene of the crime with Palm, and that together they stole the vehicles in question. The next questions were as follows:

Q. Now, you pleaded guilty to your part of this crime and were sentenced; is that correct?

A. Yes, sir.

Q. What sentence did you receive?

A. Two years.

¶15. On several occasions this Court has held that it is improper to introduce an accomplice's conviction of the same crime for which the defendant is being tried. *See, e.g.*, *Johns v. State*, 592 So. 2d 86, 89 (Miss. 1991); *Henderson v. State*, 403 So. 2d 139, 141 (Miss. 1981); *Griffin v. State*, 293 So. 2d 810 (Miss. 1974). These cases stood for the proposition that:

The law is well settled that, where two or more persons are jointly indicted for the same offense but

are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried.

*Johns v. State*, 592 So. 2d 86, 90 (Miss. 1991) (quoting *Buckley v. State*, 223 So. 2d 524, 528 (Miss. 1969).

¶16. But in *White v. State*, 616 So. 2d 304, 308 (Miss. 1993), this argument was rejected, and our Court held that although it was error to admit evidence of a guilty plea of an alleged co-conspirator, it was not reversible error. In *White* this Court distinguished *Johns because a plea of guilty is not synonymous with a conviction by a separate tribunal*, holding that:

[W]e are dealing with a plea of guilty in the instant case; that is, a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals.

Moreover, whether an error in admitting this evidence is sufficiently prejudicial to warrant reversal may be resolved differently where the offending evidence is no more than a repetition of what is said by the witness before a jury and subject to cross examination, as opposed to evidence of the collective judgment of another jury....

*White*, 616 So. 2d at 307. *See also **Henderson v. State**, 732 So. 2d 211, 215 (Miss. 1999)*.

¶17. The *White* Court, 616 So.2d at 309, also relied on a dissenting opinion in *Buckley v. State*, 223 So. 2d at 529, wherein Chief Justice Ethridge reasoned as follows:

The fact of a plea of guilty by a co-indictee is not generally admissible in evidence against another co-indictee. But the real question here is whether, considering the entire record, its admission was harmful to defendant and warrants a reversal. Reversible error might well exist where an absent co-indictee's previous conviction or guilty plea is introduced in evidence through court records. **Pickens v. State**, 129 Miss. 191, 91 So. 2d 906 (1922). Prejudicial error might also exist where a co-indictee takes the stand and testifies to a previous conviction or guilty plea without making an in-court confession. However, in the instant case these prejudicial factors do not exist. Pitts testified in great detail about his and Buckley's kidnapping and beating of the state's witness, Watkins. Without his testimony about any previous guilty plea, Pitts made a detailed, in-court confession of his guilt. He clearly established the fact that he was guilty of the crime of kidnapping. Moreover, he was subjected to a searching cross-examination by the defendant himself.

When Pitts went one step further on direct examination and testified that he had previously pleaded guilty to the same crime, he added nothing to his otherwise competent testimony. That evidence was mere surplusage, and although incompetent, was not, in my judgment, sufficient to establish an error justifying reversal of the conviction.

¶18. This Court found Chief Justice Ethridge's reasoning controlled the recent case of *Clemons*, which involved similar circumstances. Here too, that reasoning should prevail. In the present case, Wright detailed the specific acts surrounding the thefts of the ATVs, his part in the theft, and Michael Palm's part in the theft. After describing the crime, he admitted that he entered a guilty plea to the crime. The fact that he pled guilty to the individual crimes was simply reiterating his testimony from moments before where he admitted

to having committed the crimes. Consistent with recent precedent, we find the guilty plea in this case was proper. *See* **[Clemons v. State, 733 So.2d 266, 271 (Miss. 1999)](#)**; ***White v. State***, 616 So. 2d 304 (Miss. 1993). Palm's alternative argument, that he was denied effective assistance of counsel due to the admission of the guilty plea, is therefore without merit also.

### III. THE COURT ERRED IN ADMITTING THE CONFESSION BECAUSE NO SUPPRESSION HEARING WAS HELD ON THE VERSION OF THE CONFESSION TOLD TO THE JURY AND BECAUSE THE DEPUTY SHERIFF'S STATEMENT DURING INTERROGATION WAS IMPROPER.

¶19. By stipulation of the parties, the transcript from the suppression hearing held in the prior trial of Palm for grand larceny of the Honda belonging to Sammie Lovett was made a part of the record in this case.[1] The transcript was admitted into the record to determine whether Deputy Sheriff Marvin Williams's testimony from the suppression hearing in the prior trial concerning Palm's alleged confession to the theft of the Honda could be properly admitted in this case.

¶20. Although Palm objected to the admission of the testimony concerning the confession, he made no objection to the use of the testimony in this trial. Therefore, any objection at this point comes too late. *See* ***Williams v. State***, 684 So. 2d at 1189. This Court found in ***Davis v. State***, 406 So.2d 795, 799, (Miss.1981), when faced with the possibility of an involuntary confession, "absent a contemporaneous motion to exclude during the trial, the objection to the admission of the confession was waived." Although Palm is procedurally barred from asserting this argument on appeal, we will discuss the merits of his argument anyway.

¶21. Deputy Sheriff Marvin Williams testified during the suppression hearing in Palm's trial for grand larceny of Sammie Lovett's Honda that Palm confessed to the crime. However, during his testimony in the trial of this case, Williams testified that Palm confessed to the theft of the Yamaha belonging to David Weeks. Thus, Palm argues that during trial for the theft of the Yamaha, Williams erroneously testified concerning the theft of the Honda belonging to Lovett. He argues that the testimony was improper because there was no hearing on the admission of such testimony.

¶22. The testimony elicited from Williams during the suppression hearing was as follows:

Q. Now, at this time, did the Defendant, after having been advised of his rights and waiving those rights, give you a statement to the whereabouts and what happened to the Sammy Lovett (Honda) four-wheeler?

A. Yes, sir.

Q. And, tell us what he said, please.

A. He advised me that he had took the (Honda)four-wheeler off of a trailer at Mr. Sammy Lovett's house, him and another subject, and it was in the woods, and he wouldn't tell me exactly where in the woods. At that time, I had been sick, and I told him I needed to get somebody else to go with him, I didn't feel like walking in the woods. He said, "I won't talk to nobody else. I want you to do." I made up my mind to go with him and he carried me to the four-wheeler.

Q. He carried you to where it was?

A. Yes, sir, he did.

Q. All right. Did he say who actually drove the (Honda) four-wheeler off from the Lovett residence?

A. He said they pushed it out of the yard.

Q. After they pushed it out of the yard, did he say who drove it off?

A. He rode it.

¶23. Contrary to his testimony at the suppression hearing as delineated above, Williams testified as follows during the State's case in chief:

Q. Deputy Williams, I want to ask whether or not after you had read the Defendant his rights the second time, he said anything to you about the theft of David Weeks' (Yamaha) four-wheeler?

A. Yes, sir, he did.

Q. And, tell us what that is, please.

A. He told me that he - - well, at first , he told me that he wanted me to help him out on it, and I told him I couldn't make any promise to him, after I had read him his rights to him.

Q. After you told him you couldn't make any promise to him about helping him out, did he say anything to you about the four-wheeler?

A. Yes, he did.

Q. Tell us what that was, please.

A. He said that he was one of the ones that went and took the (Yamaha) four-wheeler off of Mr. Weeks' pickup, stole it.

Q. Did he say what part he himself played in that?

A. He said he drove it away.

Q. He said he drove it away?

A. Yes, sir.

Q. All right. Now, I want to ask whether or not he agreed to show you where the (Yamaha) four-wheeler was?

A. He did.

Q. Did he take you to the place where David Weeks' (Yamaha) four-wheeler was hidden?

A. Yes, he did.

Q. And, were you able to show it to Mr. Weeks and have him identify it as his (Yamaha) four-

wheeler?

A. I did not, but it was shown to him.

Q. Shown to him by the Sheriff's Office?

A. Yes, sir.

Q. I want to show you what has been marked as State's Exhibit 1 and ask if you can identify this as being the four-wheeler that the Defendant led you to, being Mr. Weeks (Yamaha) four-wheeler.

A. (Examining) Yes, this is the (Yamaha) four-wheeler.

¶24. Williams testified before the jury that Palm confessed to the crime for which he stood trial, the theft of David Weeks's Yamaha. This testimony came after the stipulated hearing was made a part of the record and reviewed by the court. There is no question that the direct testimony related only to Palm's theft of Lovett's Honda. However, on cross examination, Palm's attorney referred to "these four-wheelers." Then, Williams referred to a single four wheeler. Later, Williams refers to "the bikes," and finally, in reference to Palm, "he came back out, and he told me, 'I know where the bikes are at.'" Then, on redirect, both attorney and witness were in sync, and both were referring to "bikes"- plural. However, the fact that one of the "bikes" was the Yamaha Timberwolf 250 ATV belonging to Weeks was never mentioned during the entire suppression hearing.

¶25. When the trial court has denied a motion to suppress a defendant's confession, this Court will reverse the trial court's decision only if the trial court's ruling is manifest error or contrary to the overwhelming weight of the evidence. *McGowan v. State*, 706 So.2d 231, 235 (Miss.1997). In other words, we will not reverse a trial court finding that a confession was voluntary and admissible as long as that trial court applies the correct principles of law and the finding is factually supported by the evidence. *See Greenlee v. State*, 725 So.2d 816, 826 (Miss. 1998) (citing *Haymer v. State*, 613 So.2d 837, 839 (Miss.1993)).

¶26. The trial court erred in making the suppression hearing a part of the record and in allowing Williams to testify based on that hearing. There was no mention of the crime in the case *sub judice* in the entire hearing. The only mention of any ATV other that the Honda belonging to Lovett, was referred to in the plural words "bikes" and "they". The inference, through these plural words alone, that Palm was involved in the theft of other ATVs is not enough to amount to a confession to the theft of David Weeks's Yamaha. The question we now face is not whether the confession was voluntary, but whether there actually was a confession to the theft of David Weeks's Yamaha. There is no clear evidence in the record of the suppression hearing that would indicate that Palm ever confessed to the theft of Weeks's Yamaha. To find otherwise would be to place inference upon inference to reach a conclusion. Therefore, it was error to admit the testimony concerning the confession. The transcript of the suppression hearing obviously confused the attorneys. We assume it also confused the jury. It is also quite possible that the "confession" prejudiced the jury, therefore tainting the conviction.

¶27. We must now determine whether the error was harmless error. The United States Supreme Court has discussed the grave situation where a confession is improperly admitted into evidence as follows:

*Chapman v. California*, 386 U.S.[18], at 24[(1967)], made clear that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was

harmless beyond a reasonable doubt." The Court has the power to review the record *de novo* in order to determine an error's harmlessness. See ibid.; **Satterwhite v. Texas**, 486 U.S., at 258. In so doing, it must be determined whether the State has met its burden of demonstrating that the admission of the confession to Sarivola did not contribute to Fulminante's conviction. **Chapman**, supra, at 26....

*Arizona v. Fulminante*, 499 U.S. 279, 295-96 (1991).

A defendant's confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." **Bruton v. United States**, 391 U.S., at 139-140 (White, J., dissenting) (citing **Bruton**). While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision. In the case of a coerced confession such as that given by Fulminante to Sarivola, the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless.

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991).

¶28. The trial court's admission of a confession to a crime other than the one then before the court was reversible error and in no way harmless. The jury was under the impression that Palm confessed to the crime for which he stood trial. According to the testimony elicited from Williams during the suppression hearing in the previous trial, Palm admitted no such thing. Whether he actually confessed is not for this Court to leave to chance. Consequently, we reverse the judgment of the Scott County Circuit Court, and we remand this case to that court for a new trial.

¶29. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., AND McRAE, J., CONCUR IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**

1. Prior to Palm's motion for directed verdict, his attorney made very clear his intention that the suppression hearing be made part of the record:

BY MR. HOLLINGSWORTH: Judge, initially, I want to make clear for the record about the suppression hearing part.

BY THE COURT: Well, the suppression hearing in the other case will be made part of this record.

BY MR. HOLLINGSWORTH: Yes, sir. That's my only point. . . .