## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-KA-00412-SCT

*SYLVESTER HATHORNE a/k/a SYLVESTER JAMES HATHORNE a/k/a SYLVESTER HAWTHORNE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/1998 |
| TRIAL JUDGE: | HON. R. I. PRICHARD III |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE HYNUM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | RICHARD L. DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/21/1999 |
| MOTION FOR REHEARING FILED: | 11/18/99; denied 5/11/2000 |
| MANDATE ISSUED: | 5/18/2000 |

## BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.

## WALLER, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. On February 3, 1997, Appellant Sylvester Hawthorne ("Hawthorne"), Dorothy Hawthorne ("Dorothy") , Dinah Hawthorne ("Dinah"), Calvin Vaughn ("Vaughn"), and Lawrence McLaurin ("McLaurin"), were indicted and charged with the crime of the armed robbery of the First National Bank of Picayune in Pearl River County, Mississippi, in violation of Miss. Code Ann. § 97-3-79 (1972). All individuals except Hawthorne pled guilty. Hawthorne's case proceeded to trial on January 20, 1998, before the Circuit Court of Pearl River County, Mississippi, the Honorable R. I. Prichard, III, presiding.

¶2. The jury returned a verdict of guilty, and the court sentenced Hawthorne to serve a term of thirty years, with no eligibility for parole.

¶3. Aggrieved by the denial of his motions for a mistrial and directed verdict and the rejection of his jury instructions, Hawthorne appeals to this Court. We affirm the conviction imposed by the trial court.

## STATEMENT OF THE FACTS

¶4. On or about September 30, 1996, the First National Bank of Picayune, Pearl River County, Mississippi, was robbed. Several employees of the bank testified that three armed persons entered the bank and collected money from the teller's windows and vault. None of the bank employees could identify the robbers, who were wearing masks and gloves, and the bank's surveillance camera was inoperative.

¶5. Walter Smith testified that on September 30, 1996, he was in the bank's parking lot when he noticed a white Dodge Neon with aluminum foil over the license plate. He then saw three people run out of the bank and get into the car. According to Smith, he followed the car to the nearby Winn-Dixie grocery store, stopping at a service station to tell an attendant to call the police. He saw three people get out of the white Neon, taking their masks off, and then observed two of the males jump into a brown Dodge van already occupied by the driver who was a black female. Smith testified that he did not know what happened to the third person he saw get out of the Neon. According to Smith, the attendant then called him over to talk to the police on the phone. When Smith returned to the Winn-Dixie parking lot, he noticed both vehicles leaving with the white Neon occupied by only the driver, a heavy set black female. Smith testified that he thought all of the individuals taking their masks off were men, but that he could not be certain since he was about one hundred yards away. Smith further testified that he saw a total of three males and two females in the scenario, none of whom he could positively identify.

¶6. Stephen Watkins testified that he and his wife were driving up to the bank's drive-thru window when they saw the robbery in progress. They then drove around to the front of the bank and observed the three involved in the robbery get in a white Neon driven off by a black female. Watkins and his wife, who had called a police dispatcher from their car, followed the Neon into the nearby Winn-Dixie parking lot, where they then observed three people getting out of the Neon, two of whom were taking off their masks. The third person did not take off the mask, and Watkins was not sure if that person was a male or female. Watkins then saw the two un-masked males get into a brown van parked in the Winn-Dixie parking lot. Although Watkins had stated in the 911 call that he saw all three individuals get out of the white Neon into the brown van, he now recalled only two people getting in the van. According to Watkins, he and his wife followed the brown van until it was stopped by the police.

¶7. Patrol Officer Shelton Farmer testified that he stopped the white Neon and that Dorothy Hawthorne, a black female, was the only person in the car. Dorothy was placed under arrest and later identified as Hawthorne's mother. According to Farmer, he searched the car and found rental papers showing Dorothy had rented the car.

¶8. Ginger McElwain, an employee of Enterprise Rent-A-Car Agency, testified that on September 28, 1996, two days before the robbery, she rented a white Neon to Dorothy and Hawthorne. At trial, McElwain explained that she had verified Hawthorne's identity by looking at the driver's license information he presented.

¶9. Officer Ismael Quiroz testified that he stopped the brown van and arrested three people who were in the van: Dinah, Hawthorne's sister; McLaurin, Hawthorne's roommate; and Vaughn, Hawthorne's cousin. Quiroz further testified that he did not see Hawthorne anywhere in the area of the arrests that day.

¶10. Officer Larry Cagle testified that he searched the brown van. According to Cagle, he recovered two

black and red masks, two black pants, two weapons (a 12-gauge shotgun and a semiautomatic handgun), shirts, ammunition, and $2,095.00 in cash. No fingerprints from the weapons were recoverable.

¶11. Alan Hornky, a gun dealer in Pearl River County, testified that he sold Hawthorne a 12-gauge shotgun on September 27, 1996, approximately one month before the armed robbery. Hornky identified the shotgun taken by police from the van as the weapon he sold to Hawthorne.

¶12. Dinah testified that when police had pulled her over on September 30, 1996, Vaughn and McLaurin were also in the van. She explained that they had jumped in the van at the Winn-Dixie parking lot. She further testified that earlier on the morning of the robbery, she had gone with Hawthorne and Dorothy when they rented the white Neon.

¶13. On direct examination, Dinah admitted that, in a previous hearing, she had testified that on the morning of the robbery Vaughn, McLaurin and Hawthorne told her to come with them to pick up the white Neon at her grandmother's house. Dinah further testified that when she was at the Winn-Dixie parking lot, she saw Hawthorne standing beside the Neon vehicle and that after she pulled out of that parking lot with Vaughn and McLaurin, she did not see Hawthorne again. She had seen her mother's blue van in the Winn-Dixie parking lot that day, and it was parked next to the white Neon and brown van. She also stated that she had gone to the bank earlier on the day of the robbery in response to "the guys" telling her to go up to the bank and look around.

¶14. On cross-examination, Dinah stated that she did not think her brother helped rob the bank. She was further cross-examined about two inconsistent statements she had given to the police. In the first statement she did not implicate Hawthorne, and in the second she did.

¶15. On direct examination, McLaurin claimed that he, Vaughn and Hawthorne told Dinah to take them to Henleyfield to pick up a white rental car on the morning of the robbery. Later that day, according to McLaurin, he, Hawthorne and Vaughn entered into the bank with red and black masks on and robbed it. McLaurin stated that he had a pistol; Hawthorne had a pistol; and Vaughn had a shotgun. Contrary to other witnesses' accounts, McLaurin testified that they left the bank in a white Neon driven by Hawthorne and met Dinah and Dorothy in the Winn-Dixie parking lot. He further testified that Dorothy was waiting in a blue and white van, Dinah was waiting in a brown van, and he and Vaughn jumped in the brown van with Dinah. Hawthorne did not get in the brown van with him and Calvin and that he did not see where Hawthorne went after they left the Winn-Dixie parking lot. McLaurin further testified that Hawthorne had supplied the masks and guns used in the robbery.

¶16. On cross-examination, McLaurin admitted giving the police three different versions as to how the armed robbery occurred. In the first version, he did not implicate Hawthorne, but in the second and third statements he did.

¶17. He further testified on cross-examination that he had already pled guilty to an armed robbery in Lamar County, but had not yet been sentenced. He admitted that he was afraid that if he did not testify in accordance with what the State wished, his sentence in Lamar County might be affected.

¶18. Ricky Frierson, a detective with the Picayune City Police Department, testified that he was unable to find any fingerprints in this case, and that a blue and white Dodge conversion van, registered to Hawthorne's father, may have also been involved in the armed robbery. Frierson further testified that on September 30,

1997, a warrant was issued for Hawthorne's arrest and his picture was placed in the newspaper and on television as wanted for armed robbery. According to Frierson, Hawthorne turned himself in to the police on February 24, 1997.

¶19. After the State rested and Hawthorne's motion for a directed verdict was denied, Hawthorne testified. He denied having any part in the robbery and testified that he was in Baton Rouge, Louisiana, from the day of the robbery until February 24, 1997. He admitted that he rented the white Neon, but denied having any knowledge of its being used in the bank robbery.

## STATEMENT OF THE LAW

### I. THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR NEW TRIAL ON THE FOLLOWING GROUNDS:

### A. THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR MISTRIAL.

¶20. Hawthorne claims that he should have been granted a mistrial after Dinah, a co-indictee, informed the jury that she had entered a guilty plea in the same offense.

¶21. At the request of defense counsel, the trial judge instructed the prosecuting attorney to tell his witnesses not to mention that some of the co-defendants had already pled guilty to the crime for which Hawthorne was now on trial.

¶22. On re-direct examination, the State inquired about the voluntariness of a prior statement Dinah had given. Dinah had given more than one statement concerning the crime, and, in her attempt to find out which statement the State was referring to, the following exchange occurred:

RE-DIRECT BY THE STATE OF DINAH HAWTHORNE:

MR. MCDONALD (for the State): All right. Now, when I asked you about the - when I went over the questions I went over with you from previous sworn testimony that you gave, there's also another item in here and I want to show that to you before I ask you about it.

MR. HYNUM (for the defense): Now, I would object. This is improper procedure. He can ask the question if she didn't answer the way she did previously, he can impeach her with the statement.

THE COURT: Sustain since I've given her a chance to read the entire statement for herself.

MR. MCDONALD: I'm just trying to speed things up a little bit.

MR. MCDONALD: Ms. Hawthorne, at the time you gave that sworn statement were you asked if anybody, law enforcement, codefendant, anybody else, anybody mistreated you, abused you, coerced you, intimidated you, threatened you, made any promises to you or put any pressure on you?

DINAH: At which statement?

MR. MCDONALD: When you gave that sworn statement?

DINAH: When I appeared in court?

THE COURT: Right.

DINAH: Yes, sir.

MR. MCDONALD: And you answered to that "no, sir"; isn't that correct.

DINAH: Could you repeat the question again?

MR. MCDONALD: Weren't you asked since all this came up, has anybody, whether they be law enforcement, District Attorney's Office, victim, anybody else, codefendant, has anybody mistreated you, abused you, coerced you, intimidated you, threatened you, made any promises to you or put any pressure on you. Did you not respond, no, sir, to that question?

DINAH: On my plea of guilty?

MR. HYNUM: Move for a mistrial, Your Honor

Hawthorne's motion for a mistrial was overruled by the Court. Curative instructions were not requested.

¶23. As Hawthorne points out, this Court has held that admission of testimony regarding the conviction of a co-indictee denies a defendant a fair trial and is reversible error. ***Johns v. State***, 592 So. 2d 86, 90 (Miss. 1991); ***Henderson v. State***, 403 So. 2d 139, 141 (Miss. 1981); ***Griffin v. State***, 293 So. 2d 810, 812 (Miss. 1974). In those cases, the jury was made aware that the witnesses had been tried by a jury and found guilty of the same crime for which the defendant was on trial.

¶24. However, the instant case is factually distinguishable. Dinah pled guilty, as opposed to being found guilty by a jury. As such, the facts of the case *sub judice* is more in line with ***White v. State***, 616 So. 2d 304 (Miss. 1993). *See also* ***Clemons v. State***, 733 So. 2d 266 (Miss. 1999); ***Henderson v. State***, 732 So. 2d 211, 215 (Miss. 1999).

¶25. In ***White***, White and two co-indictees were charged with the crime of burglary of a dwelling. At White's trial, one of the co-indictees testified that he had already pled guilty to the burglary. In distinguishing ***White*** from previous cases, Justice Banks wrote:

> In four of the cases relied upon, *Ivy, Johns, Henderson*, and *Griffin*, the witness had been tried by a jury and found guilty of the same crime for which the defendant was being tried. The danger at issue in these cases is that one jury would rely upon the judgment of a prior jury in reaching its decision. These cases are distinguishable, however, because we are dealing with a plea of guilty in the instant case; that is, a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals.

***White***, 616 So. 2d at 307.

¶26. The ***White*** opinion noted opinions from other states and federal courts on the admissibility of evidence that a witness had previously entered a guilty plea on the same charge and concluded that when a witness testifies at trial to his involvement in the crime, admitting that he had pled guilty to that crime is evidence of a prior consistent statement and is admissible under Miss. R. Evid. 801(d)(1). ***White***, 616 So. 2d at 307-09.

¶27. In *White*, the Court was concerned about preventing a jury from relying upon another jury's judgment in reaching its decision. Here, there was no chance of such improper reliance because there was never any introduction of evidence of the findings of another tribunal. Additionally, by inadvertently testifying to an earlier plea of guilt, Dinah only gave evidence of a prior consistent statement which is admissible under Miss. R. Evid. 801(d)(1). Accordingly, this assignment of error does not warrant reversal.

### B. THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT.

¶28. The State is required to prove every element of the offense charged beyond a reasonable doubt. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). In determining whether the evidence is sufficient to support Hawthorne's conviction, we must accept as true all evidence favorable to the State, together with all reasonable inferences that may be drawn from that evidence. *Forbes v. State*, 437 So. 2d 59, 60 (Miss. 1983) (*citing Bullock v. State*, 391 So. 2d 601, 606 (Miss. 1980)). If that evidence is such that a jury could reasonably conclude that all the essential elements of the crime had been proven beyond a reasonable doubt, then it is legally sufficient. *Id.*

¶29. Hawthorne complains that only one witness, McLaurin, testified that Hawthorne had any involvement in the subject robbery and that McLaurin's testimony was uncorroborated, self-contradicted, substantially impeached, and, therefore, insufficient to support the jury's verdict of armed robbery.

¶30. This Court's stringent standard of appellate review for challenges to the legal sufficiency of evidence was articulated in *Garrett v. State*, 549 So. 2d 1325, 1331 (Miss. 1989) (*quoting McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987)):

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence-not just that supporting the case for the prosecution-in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions,the verdict of guilty is thus placed beyond our authority to disturb.

(Citations omitted.)

¶31. We further stated in *Mason v. State*, 429 So. 2d 569, 572 (Miss. 1983) (*quoting Young v. State*, 425 So. 2d 1022, 1024 (Miss. 1983)):

> *Only slight corroboration of an accomplice's testimony is required to sustain a conviction. Feranda v. State*, 267 So. 2d 305 (Miss. 1972). The testimony of Harrison and Dorman was corroborated to some extent by Easterling and Patricia Thrasher. *The credibility and reasonableness of the testimony of Harrison and Dorman was for the determination of the jury. Cochran v. State*, 278 So. 2d 451 (Miss. 1973). It is within the province of the jury to accept parts of the testimony of any witness, and the jury may give consideration to all inferences flowing

from the testimony. *Grooms v. State*, 357 So. 2d 292 (Miss. 1978).

¶32. McLaurin testified that, on the morning of the robbery, he, Vaughn, and Hawthorne picked up a white Neon, which was later used to escape the scene of the crime. He also testified that he, Vaughn and Hawthorne entered the bank and robbed it with guns supplied by Hawthorne. Hawthorne is correct in noting that McLaurin gave three different versions of the bank robbery before trial, with all except the first version implicating Hawthorne. Hawthorne is also correct in noting that McLaurin's trial testimony as to who was driving the white Neon when it left the bank conflicts with the other witnesses' accounts. However, we disagree with Hawthorne that McLaurin's testimony is insufficient to support the verdict. McLaurin's testimony was corroborated in part by two independent witnesses. First, Ginger McElwain of Enterprise Rent-A-Car Agency testified that Hawthorne and his mother rented the white Neon used in the robbery. Secondly, Alan Hornky testified that approximately one month before the robbery, he sold Hawthorne the 12-gauge shotgun which was found in the brown van by the police after the robbery. Additionally, Dinah testified that earlier on the morning of the robbery she had gone with Hawthorne to pick up a white Neon and that she saw Hawthorne standing next to the white Neon in the Winn-Dixie parking lot before she drove off with accomplices Vaughn and McLaurin.

¶33. Giving the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence, there is sufficient evidence in the record from which a jury could find beyond a reasonable doubt that Hawthorne participated in the subject armed robbery. "[T]he jury is the trier of fact and if their verdict is supported by the evidence, we will not disturb it." *Pace v. State*, 473 So. 2d 167, 169 (Miss. 1985). This issue is without merit.

### C. THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S PROPOSED JURY INSTRUCTION NUMBER D-5.

¶34. The State submitted and was granted the following instruction on accomplice testimony:

> A person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care and caution and suspicion. You may give it such weight and credit as you deem it is entitled.

¶35. Hawthorne submitted and was denied the following instruction on accomplice testimony:

> The Court instructs the jury that the uncorroborated testimony of an accomplice should be viewed with great caution and suspicion and that it must be reasonable and not improbable or self-contradictory or substantially impeached.

¶36. The trial court, in refusing to grant Hawthorne's instructions, stated that the State's instruction was better written and more succinct. Hawthorne argues that the State's instruction did not fully instruct the jury on the applicable law and that it was crucial for the jury to understand that the uncorroborated testimony of an accomplice had to be reasonable, not improbable or self-contradictory or substantially impeached.

¶37. In *Calhoun v. State*, 526 So. 2d 531, 533 (Miss. 1988), we stated "it must . . . be noted that a trial court is not required to instruct a jury over and over on a point of law even though some variations are used in different instructions." (Citations omitted.) We further stated "if when all instructions are read together, the jury is fully and fairly instructed by other instructions the refusal of other similar instructions is not reversible error." *Id*.

¶38. Hawthorne mainly relies on two cases for this assignment of error: ***Hussey v. State***, 473 So. 2d 478 (Miss. 1985), and ***Wheeler v. State***, 560 So. 2d 171 (Miss. 1990). Hawthorne's reliance, however, is misplaced. In ***Hussey***, the trial court failed to give *any* cautionary instructions on accomplice testimony, and in ***Wheeler***, the accomplice's testimony was uncorroborated. As discussed above, the accomplice's testimony here was corroborated. Additionally, in ***Wheeler***, where the words "and suspicion" had been omitted, the Court explained that the same instructions granted in the instant case would have sufficed. ***Wheeler***, 560 So. 2d at 174.

¶39. Furthermore, the instruction granted in the case at bar is a model jury instruction. Accordingly, this Court finds that the trial court did not err in refusing Hawthorne's accomplice instruction.

### II. THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S SUPPLEMENTAL MOTION FOR NEW TRIAL AND/OR IN NOT HOLDING AN EVIDENTIARY HEARING ON THE MOTION.

¶40. While Hawthorne's motion for new trial was pending, his attorney obtained a statement from McLaurin averring that earlier statements given by him to the police implicating Hawthorne were given against his will and coerced by the police. Hawthorne filed a supplemental motion for new trial with McLaurin's statement attached to the motion. Hawthorne's attorney allegedly informed the trial court that McLaurin also stated on his oath in a subsequent unrelated proceeding that his previous testimony implicating Hawthorne was false. In denying the supplemental motion, the trial judge noted:

> Of particular note with respect to the instant motion is the fact that [McLaurin] has never recanted the testimony he gave in open court during the Defendant's trial in this Pearl River County case. In fact, he has not personally submitted any documents or evidence into the record into the record in *this* case to indicate any intention to withdraw either his Pearl River County guilty plea or his testimony in the Pearl River County trial of this Defendant. The trial of Sylvester Hawthorne took place in January, 1988. [McLaurin's] affidavit -which is not filed on record in either this case or the Lamar County case-deals solely with his statements to law enforcement personnel prior to trial and with [McLaurin's] own guilty plea. Thus, there is no evidence before the Court indicating that [McLaurin] wishes to recant his sworn trial testimony against the Defendant in this case.

> Moreover, the Defendant's assertions that "without . . . [McLaurin's testimony] the defense would have clearly been entitled to a directed verdict" is without merit. Even without [McLaurin's] testimony, there was sufficient testimony and physical evidence presented to submit this case to the jury. Accordingly, the Court finds that the Defendant's Supplemental Motion for New Trial should be denied as well.

¶41. Hawthorne argues that the trial court should have held an evidentiary hearing on the supplemental motion for new trial to determine whether the new evidence was sufficient to order a new trial.

¶42. An evidentiary hearing is not necessary where the allegations in a petition for post-conviction relief are specific and conclusory. ***Cole v. State***, 666 So. 2d 767, 777 (Miss. 1995) (*citing* ***Celestine v. Blackburn***, 750 F.2d 353, 358 (5th Cir. 1984)). A new trial should be granted only when the new evidence "give[s] rise to grave doubts of [the defendant's] guilt . . . or raise[s] a reasonable probability, that if presented in a new trial, it would cause a jury to reach a different verdict." ***Entrekin v. State***, 242 Miss.

262, 266, 134 So. 2d 926, 927 (1961); *see also* **Turner v. State, 673 So. 2d 382 (Miss. 1996)**.

¶43. The trial court erred in finding that the evidence was sufficient to support a conviction without McLaurin's testimony. McLaurin provided the only first-hand testimony which specifically designated Hawthorne as a principal collaborator. Therefore, absent McLaurin's testimony, the remaining evidence fails to support a conviction.

¶44. However, because McLaurin neither recanted the sworn testimony contained in the affidavit nor stated that his testimony against Hawthorne was false, we find that the trial court did not err in foregoing an evidentiary hearing and denying Sylvester's supplemental motion for a new trial. McLaurin only alleged that the statements he gave to police during their investigation were given "against [his] will and [were] a form of saving [himself] . . . ." Furthermore, the trial court was correct in not relying upon the unsworn statement of an attorney concerning McLaurin's testimony in an unrelated, subsequent hearing. Therefore, the supplemental motion for new trial reveals no new evidence which "raises a probability that, if presented in a new trial, . . . would cause a jury to reach a different verdict." Accordingly, this Court finds that there was no need to hold an evidentiary hearing and that the court did not err in denying Hawthorne's supplemental motion for a new trial.

## CONCLUSION

¶45. Hawthorne fails to present any assignments of error requiring reversal on appeal. Therefore, the judgment of the trial court is affirmed.

¶46. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE PURSUANT TO MISS. CODE ANN. §§ 47-7-3(1)(d)(ii) and 47-7-3(1)(g) (Supp. 1997) AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR.**